[Cite as *State v. Woodard*, 2017-Ohio-6941.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


STATE OF OHIO,                                    :

    Plaintiff-Appellee,                         :            CASE NO.   CA2016-09-084

    - vs -                                                :            O P I N I O N
                                                               7/24/2017

                                                        :

JERRELL R. WOODARD,                        :

    Defendant-Appellant.                       :


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 16 CR 31842


David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Craig A. Newburger, 477 Forest Edge Drive, South Lebanon, Ohio 45065, for defendant-appellant


**HENDRICKSON, P.J.**

{¶ 1}   Defendant-appellant, Jerrell R. Woodard, appeals from his conviction and sentence in the Warren County Court of Common Pleas for possession of heroin and aggravated possession of drugs.

{¶ 2}   Appellant was indicted on one count of possession of heroin in violation R.C. 2925.11(A) and one count of aggravated possession of drugs in violation of R.C. 2925.11(A),

both felonies of the fifth degree. The charges arose out of an incident that occurred at the Lebanon Correctional Institution ("LCI") on September 30, 2015, when a corrections officer observed appellant, an inmate, hand over a baggie of drugs to Deron Partee, another inmate. The baggie contained heroin, a schedule I drug, and fentanyl, a schedule II drug.

{¶ 3} Appellant pled not guilty to the charges and a jury trial commenced on September 15, 2016. At this time, the state presented testimony from Joshua Murray and Dion Isome, two corrections officers at LCI, Jason T. Hall, an investigator at LCI, and Ohio State Highway Patrol Trooper Joe Griffith. The state also introduced into evidence security footage of the prison's gymnasium and hallway, the recovered baggie of drugs, photographs of the baggie, and a laboratory report identifying the drugs as heroin and fentanyl.[1]

{¶ 4} Murray testified that at approximately 7:45 p.m. on September 30, 2015, he was working in the recreation area of LCI. He observed appellant exit the prison's gymnasium and enter a breezeway that separated the gymnasium from a hallway. Murray saw appellant reach into his pocket before he made contact and handed over an item to Partee in the breezeway. Murry was about six feet away from appellant and Partee when he observed the hand-to-hand exchange. Murray had noticed that Partee's hands had been empty prior to appellant making contact with Partee.

{¶ 5} After he observed the exchange, Murray kept a visual on the item in the hand of Partee. Murray followed Partee into the hallway, stopped him, and tried to retrieve the item. Partee, however, put the item from his hand into his mouth. Murray instructed Partee not to swallow the item. Partee threw his elbow at Murray's face, and Murray took Partee to the ground. Partee was eventually restrained and the item he had briefly placed in his mouth was recovered by Corrections Officer Isome.

---

1. The parties stipulated that the drugs contained in the baggie were heroin and fentanyl and agreed that the lab report would be admitted into evidence.

**{¶ 6}** After Partee was restrained, Murray approached appellant and asked him what he had given to Partee during the exchange. Appellant initially denied handing anything to Partee, but eventually stated he handed over "just a little weed." Murray stated the baggie recovered from Partee was examined and tested. The baggie contained an off-white powdery substance that tested positive for heroin and fentanyl. Murray also explained that while there are cameras in the gymnasium and hallway at the prison, there is not a camera in the breezeway where the exchange occurred.

**{¶ 7}** Isome testified that when he responded to the recreational area on September 30, 2015, he saw multiple officers wresting with Partee on the ground. Partee appeared to be trying to cover up a plastic bag. Isome collected the plastic bag, which had blood and saliva on it.

**{¶ 8}** Hall and Griffith testified about their investigation into the incident, explaining that they had viewed available security footage and had the contents of the recovered baggie tested. Testing by the Highway Patrol Crime Lab indicated the baggie contained heroin and fentanyl.

**{¶ 9}** Following the state's presentation of its case-in-chief, appellant moved for acquittal pursuant to Crim.R. 29. His motion was denied by the trial court. Thereafter, appellant presented testimony from Partee. Partee testified that he was incarcerated at LCI for aggravated assault and having weapons while under disability. He claimed that he met appellant in jail and that they "got along." He denied that appellant gave him anything on September 30, 2015, when the two shook hands. He stated that at the time he shook hands with appellant, he was already in possession of the baggie full of drugs. Partee claimed to have found the baggie earlier in the day in the prison's workout area. Partee stated that after finding the baggie, he held it in his hand so that if he got caught he could quickly "eat" the baggie.

{¶ 10}   After Partee testified, appellant renewed his Crim.R. 29 motion for acquittal. The trial court denied the motion, closing arguments were held, and the case was submitted to the jury.  The jury returned guilty verdicts on both counts.  The trial court determined appellant's conviction for possession of heroin and his conviction for aggravated possession of drugs did not merge as allied offenses of similar import.  The court sentenced appellant to nine months in prison on each count, with the terms running concurrently to one another, but consecutively to the prison term he was already serving.

{¶ 11}   Appellant appealed, raising two assignments of error.  For ease of discussion, we begin by addressing appellant's second assignment of error.

**Sufficiency and Manifest Weight**

{¶ 12}   Assignment of Error No. 2:

{¶ 13}   THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR GOES AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN APPELLANT'S CONVICTIONS FOR ONE COUNT OF POSSESSION OF HEROIN, ORC 2925.11(A), A FELONY OF THE FIFTH DEGREE, AND ONE COUNT OF AGGRAVATED POSSESSION OF DRUGS, ORC 2925.11(A), A FELONY OF THE FIFTH DEGREE.

{¶ 14}   In his second assignment of error, appellant contends that his convictions for possession of heroin and aggravated possession of drugs were not supported by sufficient evidence and were against the manifest weight of the evidence.  Appellant further argues that there was "confusing, prejudicial, and speculative material testimony given by the [s]tate's witnesses" and that under a structural error analysis his convictions should be reversed.

{¶ 15}   Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.).  When reviewing the sufficiency of

the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 16} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. In reviewing the evidence, an appellate court must be mindful that the jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). Therefore, an appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 17} Further, although the legal concepts of sufficiency of the evidence and weight of the evidence are quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the

issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19. *See also State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43 ("a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency").

{¶ 18} A defendant's convictions may be based on circumstantial evidence alone. *State v. Brown*, 12th Dist. Butler No. CA2014-12-257, 2015-Ohio-3407, ¶ 12. "Circumstantial evidence is proof of certain facts and circumstances in a given case, from which the jury may infer other, connected facts, which usually and reasonably follow according to the common experience of mankind." *State v. Stringer*, 12th Dist. Butler No. CA2012-04-095, 2013-Ohio-988, ¶ 31. Circumstantial evidence inherently possesses the same probative value as direct evidence, and a conviction based on circumstantial evidence is no less sound than one based on direct evidence. *Brown* at ¶ 12.

{¶ 19} Appellant was convicted of possession of heroin and aggravated possession of drugs. R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Pursuant to R.C. 2925.11(C)(6), "[i]f the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of possession of heroin." Where the "drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, hashish, and controlled substance analogs, whoever violates division (A) of this section is guilty of aggravated possession of drugs." R.C. 2925.11(C)(1).

{¶ 20} Possession is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be actual or constructive. *State v. Fultz*, 12th Dist. Butler No. CA2015-06-

103, 2016-Ohio-1486, ¶ 12.  Absent a defendant's admission, the surrounding facts and circumstances, including a defendant's actions, are evidence that a trier of fact may consider in determining whether the defendant had constructive possession.  *State v. Graves*, 12th Dist. Clermont No. CA2015-03-022, 2015-Ohio-3936, ¶ 22.  "The discovery of readily accessible drugs in close proximity to the accused constitutes circumstantial evidence that the accused was in constructive possession of the drugs."  *Fultz* at ¶ 13.

{¶ 21}  "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."  R.C. 2901.22(B).  Further, "[a] person has knowledge of circumstances when the person is aware that such circumstances probably exist."  *Id.*

{¶ 22}  After reviewing the record, weighing inferences and examining the credibility of the witness, we find that appellant's convictions for possession of heroin and aggravated possession of drugs are supported by sufficient evidence and are not against the weight of the evidence.  The state presented testimony and evidence from which the jury could have found all the essential elements of the offenses proven beyond a reasonable doubt.

{¶ 23}  At trial, the state introduced circumstantial evidence that appellant possessed, or had control over, the baggie of drugs given to Partee.  Appellant was observed reaching into his pocket immediately before making contact with Partee.  Corrections Officer Murray testified Partee's hands were empty before he came into contact with appellant.  However, after Partee and appellant made contact, Partee had an item in his hands.  Murray kept a visual on the item in Partee's hands until he was able to stop Partee to retrieve the item. After the corrections officers obtained the item from a struggling and uncooperative Partee, they discovered it was a plastic baggie containing an off-white powdery substance which tested positive for heroin, a schedule I substance, and fentanyl, a schedule II substance.  Further, in addition to this evidence, appellant also admitted to Murray that he possessed the

baggie when he confessed to handing over "just a little weed" to Partee. Although appellant mischaracterized the controlled substance he handed over to Partee, the fact remains appellant knowingly possessed controlled substances in violation of R.C. 2925.11(A).

{¶ 24} In finding appellant guilty of possession of heroin and aggravated possession of drugs, the jury was entitled to discredit Partee's testimony that he found the drugs and that appellant had not given him the drugs when they shook hands. "[I]t is well-established that when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. The jury, as the trier of fact, was "free to believe all, part, or none of the testimony of each witness who appear[ed] before it." *State v. Coleman*, 12th Dist. Butler No. CA2010-12-329, 2011-Ohio-4564, ¶ 26. Accordingly, as the inclination of the greater amount of credible evidence clearly supports appellant's convictions for possession of heroin and aggravated possession of drugs, we conclude that appellant's convictions are not against the manifest weight of the evidence and are supported by sufficient evidence.

{¶ 25} In concluding appellant's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence, we reject appellant's argument that the trial court committed plain error or structural error in permitting the testimony given by the state's witnesses. Appellant argues in his appellate brief that "[t]he confusing, prejudicial and speculative material testimony given by State's witnesses requires a plain or structural error analysis." Appellant does not, however, identify what specific testimony the trial court allegedly improperly admitted.

{¶ 26} This court has thoroughly reviewed the record, and we find no error – plain or structural – in the admission of the state's witnesses testimonies. The state's witnesses either testified about events they personally observed on September 30, 2015, or the results

of their investigation into the events that occurred on September 30, 2015. Such testimony was relevant and probative to the charges set forth in the indictment, and it was therefore properly admitted.

{¶ 27} Accordingly, as the arguments set forth in appellant's second assignment of error are without merit, we hereby overrule the assignment of error.

**Allied Offenses**

{¶ 28} Assignment of Error No. 1:

{¶ 29} THE TRIAL COURT ERRED WHEN IT IMPOSED SEPARATE CONVICTIONS AND PRISON SENTENCES FOR ONE COUNT OF POSSESSION OF HEROIN, ORC 2925.11(A), A FELONY OF THE FIFTH DEGREE, AND ONE COUNT OF AGGRAVATED POSSESSION OF DRUGS, ORC 2925.11(A), A FELONY OF THE FIFTH DEGREE.

{¶ 30} In his first assignment of error, appellant argues the trial court erred by not merging his convictions for possession of heroin and aggravated possession of drugs as allied offenses of similar import. Appellant contends that because the heroin and fentanyl were found in the same baggie, his possession offenses "were not dissimilar in import or significance; were not committed separately; and were committed with the same animus and motivation."

{¶ 31} An appellate court applies a de novo standard of review in reviewing a trial court's merger determination. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 28; *State v. Stevens*, 12th Dist. Butler No. CA2015-09-020, 2017-Ohio-498, ¶ 9.

{¶ 32} Pursuant to R.C. 2941.25, Ohio's multiple-count statute, the imposition of multiple punishments for the same criminal conduct is prohibited. *State v. Brown*, 186 Ohio App.3d 437, 2010-Ohio-324, ¶ 7 (12th Dist.). R.C. 2941.25 states:

(A) Where the same conduct by defendant can be construed to

constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 33} In determining whether offenses are allied and should be merged for sentencing, courts are instructed to consider three separate factors – the conduct, the animus, and the import. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, paragraph one of the syllabus. Offenses do not merge and a defendant may be convicted and sentenced for multiple offenses if *any* of the following are true: "(1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Id.* at paragraph three of the syllabus and ¶ 25. Two or more offenses of dissimilar import exist "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus.

{¶ 34} Despite appellant's arguments to the contrary, his convictions for possession of heroin and aggravated possession of drugs are not allied offenses of similar import. This court and many others have held that the simultaneous possession of two types of drugs constitutes two separate offenses that do not merge as allied offenses of similar import under R.C. 2925.11. *See, e.g., State v. Graves*, 12th Dist. Clermont No. CA2015-03-022, 2015-Ohio-3936, ¶ 43-44 (finding defendant's convictions for trafficking in heroin and aggravated trafficking in drugs did not merge); *State v. Daniels*, 12th Dist. Fayette No. CA2014-05-010, 2015-Ohio-1346, ¶ 16-17 (finding defendant's convictions for trafficking in heroin, trafficking in cocaine, and trafficking in methadone did not merge as "[e]ach trafficking offense required

- 10 -

proof specific to that drug and could not be supported by trafficking in a different controlled substance"); *State v. Helmick*, 9th Dist. Summit No. 27179, 2014-Ohio-4187, ¶ 27 (finding defendant's convictions for aggravated possession of drugs and possession of marijuana did not merge as allied offenses); *State v. Santiago*, 8th Dist. Cuyahoga No. 101601, 2015-Ohio-1300, ¶ 12 (finding the "simultaneous possession of heroin and cocaine, each recognized as a separate offense under R.C. 2925.11, does not constitute allied offenses of similar import for sentencing"); *State v. Heflin*, 6th Dist. Lucas No. L-11-1173, 2012-Ohio-3988, ¶ 14 (finding defendant's possession of cocaine and possession of heroin did not merge as allied offenses of similar import as "possession of either cocaine or heroin will never support a conviction for possession of the other").

{¶ 35} Possession of heroin and aggravated possession of drugs are two separate offenses pursuant to R.C. 2925.11(C)(6) and (C)(1). Each possession offense required proof as to the specific drug involved and could not be supported by possession of a different controlled substance. *See Daniels* at ¶ 17; *State v. Delfino*, 22 Ohio St.3d 270 (1986), syllabus.[2] The possession of heroin or fentanyl will never support a conviction for possession of the other. The fact that the two controlled substances were found in the same baggie is of no consequence. *See Heflin* at ¶ 9-14. Therefore, appellant's possession offenses are not allied offenses of similar import. Appellant's first assignment of error is overruled.

**Errors in Sentencing Entry – Nunc Pro Tunc Entry**

{¶ 36} In reviewing the record in the present case, this court noticed clerical errors in the trial court's September 16, 2016 Judgment Entry of Sentence. At appellant's September

---

2. The dissent argues that "one weight" is used to prove both offenses. Weight is not an element of either offense. The possession of any quantity of heroin is sufficient to prove possession of heroin in accordance with R.C. 2925.11(C)(6)(a). Likewise, the possession of any quantity of fentanyl is sufficient to prove aggravated possession of drugs in accordance with R.C. 2925.11(C)(1)(a). Here, a jury found that appellant *knowingly possessed* two separate controlled substances and, pursuant to the allied offense framework set forth in R.C. 2941.25, the offenses of possession of heroin and aggravated possession of drugs do not merge.

15, 2016 sentencing hearing, the trial court properly sentenced appellant to concurrent nine-month prison terms on each possession conviction, and then ran this sentence consecutive to the prison sentence appellant was already serving. The Judgment Entry of Sentence, however, failed to separately state the prison sentence imposed on each possession count and failed to specify that the counts were run concurrently to one another.[3] Further, although the trial court made the necessary R.C. 2929.14(C)(4) consecutive sentence findings at the sentencing hearing, it failed to incorporate the findings into the sentencing entry. As the court's errors are clerical in nature, the trial court may issue a nunc pro tunc entry to correct its mistakes so that the sentencing entry accurately reflects what the court decided at the sentencing hearing. *See State v. Goodwin*, 12th Dist. Butler No. CA2016-05-099, 2017-Ohio-2712, ¶ 45-46; *State v. Fridley*, 12th Dist. Clermont No. CA2016-05-030, 2017-Ohio-4368, ¶ 52.

**{¶ 37}** Judgment affirmed in part, reversed in part, and the matter remanded for the limited purpose of issuing a nunc pro tunc sentencing entry.

S. POWELL, J., concurs.

RINGLAND, J., concurs in part and dissents in part.

**RINGLAND, J., concurring in part and dissenting in part.**

**{¶ 38}** I respectfully dissent from the majority opinion because, based on the facts of this case, I believe appellant's convictions for possession of heroin and aggravated possession of drugs should merge.

---

3. Rather than stating that a nine-month prison sentence had been imposed on count one and a nine-month prison term had been imposed on count two, to run concurrently to one another but consecutively to the time appellant was already serving in prison for another conviction, the court merely listed the offenses appellant had been convicted of and stated that appellant was "ordered * * * to be sentenced to 9 months consecutive to the time he is currently serving in prison."

**{¶ 39}** The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." The Double Jeopardy Clause applies to Ohio citizens through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056; Ohio Constitution, Article I, Section 10. The Clause is designed to protect against three abuses: (1) "a second prosecution for the same offense after acquittal," (2) "a second prosecution for the same offense after conviction," and (3) "multiple punishments for the same offense." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 10, citing *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072 (1969).

**{¶ 40}** The present case involves the third protection: multiple punishments for the same offense. R.C. 2941.25 codifies the double jeopardy protections for when multiple punishments can be imposed:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶ 41}** The Ohio Supreme Court has interpreted this statute differently over the years. The cases led to the formation of a two-part test to compare the elements of the offense and the defendant's conduct and animus for each offense. *Ruff* at ¶ 15-16. That test was subsequently altered to require an "abstract analysis" of the offenses. *State v. Rance*, 85 Ohio St.3d 632, 638-639 (1999).

**{¶ 42}** The Supreme Court overruled the abstract analysis test in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, ¶ 44. In so doing, the court adopted a new test, which

instructs courts to consider the offenses at issue in light of the defendant's conduct. *Id.* at ¶ 46. The Supreme Court later found that the analysis in *Johnson* was incomplete and formed the current test for allied offenses. *Ruff* at ¶ 16. As a result, the current law states that if any of the following occurs, a defendant may be convicted and sentenced for multiple offenses: "(1) the offenses are dissimilar in import or significance – in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Id.* at ¶ 25.

**{¶ 43}** In the present case, appellant handed over a single bag of drugs to Deron Partee. The bag contained a mixture of heroin, a schedule I drug, and fentanyl, a schedule II drug. The possession of either drug may constitute a criminal offense. Appellant was tried and convicted on one count of possession of heroin and one count of aggravated possession of drugs related to the fentanyl. The trial court found that the convictions did not merge and the majority opinion affirms that decision. The only evidence that the majority relies on is the crime lab evidence that the .106 grams of powder contained "+/- 0.0123" grams of heroin and the notation "[s]ample also found to contain [f]entanyl."

**{¶ 44}** Though it is true that "possession of heroin or fentanyl will never support a conviction of possession of the other," that conclusion ignores the reality of what occurred in this case. Appellant possessed a single bag of drugs. There is no evidence that appellant knew the bag of drugs contained both heroin and fentanyl. Without the help of science and technology, it is not clear if a person could distinguish that the bag contained both heroin and fentanyl. The bag was merely categorized by a corrections officer as an "off-white, talcum powder type material."

**{¶ 45}** This issue is intertwined with the very serious problems associated with the

opioid epidemic.[4] Rising mortality rates due to accidental overdose are due in part to the fact that drug dealers are spiking heroin with much more potent synthetic opioids, such as fentanyl and carfentanil. Synthetic opioids are usually in the form of a white powder and may be indistinguishable from other street drugs. Fentanyl and carfentanil are multiple times more powerful than heroin and can be purchased at a lower cost. The incentive for the dealer is simple. Adding a small amount of fentanyl or carfentanil to heroin is a low-cost way to increase its value. The dealer may take heroin, cut it with a common filler to increase the volume and then add a more powerful synthetic opioid to maintain high potency. The dealer would then sell the drug to the user who may be completely unaware of the contents.

{¶ 46} That is the situation that occurred here.[5] The evidence supports appellant's guilt on a possession charge, but the charges should have been merged. Appellant possessed a single bag containing an opioid, off-white powder. The merger doctrine is designed to prevent punishment for the same offense under two different statutes. I have reservations about allowing two convictions under these circumstances where there is absolutely no evidence, either directly or circumstantially, that appellant knew the bag contained two separate opioid drugs. Simply, the record reflects that the particular heroin that appellant possessed was laced with fentanyl. In this case, there was a single course of conduct. There is no evidence that the offenses were committed with separate animus or motivation. Though heroin (an opioid) and fentanyl (a synthetic opioid) are scheduled differently, there was no separate or identifiable harm based on these facts. Under these circumstances, I do not see the societal benefit to convicting a drug user on two charges from what is generally one criminal act. Moreover, I do not believe the majority decision comports

---

4. Centers for Disease Control and Prevention, *Opioid Basics*, https://www.cdc.gov/drugoverdose/opioids/fentanyl.html (accessed July 13, 2017).

5. This analysis, of course, is limited to possession offenses. Drug traffickers, the individuals adding these highly dangerous compounds and fueling the opioid epidemic, would not be covered under such a merger analysis.

with the rationale behind the merger analysis and double jeopardy protections.

{¶ 47} The majority's decision may also pose problems for future cases involving bulk weight controlled substances. This is problematic because the statutory scheme imposes enhanced penalties for bulk weight offenses. In *State v. Gonzalez*, Slip Opinion No. 2017-Ohio-777, the Ohio Supreme Court interpreted a similar statute involving the offense level for cocaine possession under R.C. 2925.11(C)(4). The court held "R.C. 2925.11(C)(4)(b) * * * penalizes an offender for the amount of cocaine possessed, and the amount of 'cocaine' clearly encompasses the whole compound or preparation of cocaine, including fillers that are part of the usable drug." *Id.* at ¶ 9.

{¶ 48} The court in *Gonzalez* recognized that powder cocaine, like heroin, is typically "cut" by adding other drugs, adulterants, or other inert substances. *Id.* at ¶ 11. The purity level of powder cocaine may vary considerably. *Id.* However, the fillers or adulterants are not intended to be removed before consumption. *Id.* at ¶ 12. Therefore, the Court noted "the fillers are an inherent part of powder cocaine." *Id.* As a result, the applicable offense level for cocaine possession is determined by the total weight of the drug, including the fillers that are part of the usable drug. *Id.* at ¶ 18.

{¶ 49} While *Gonzalez* involved the possession of cocaine, there is no reason to believe that the rule would not similarly apply to the possession of heroin or fentanyl. A bulk weight finding was not made in this case, but it is worth considering the effect of the majority's decision as applied to the statutory scheme. As noted above, fentanyl is an increasingly common adulterant in heroin. The crime lab evidence showed that appellant possessed .106 grams of powder. The powder contained "+/- 0.0123" grams of heroin and an unspecified amount of fentanyl. Based on the Ohio Supreme Court's decision in *Gonzalez*, the filler and adulterants are part of the usable drug. Therefore, appellant possessed both .106 grams of heroin and .106 grams of fentanyl, even though appellant only

possessed .106 grams of powder. If appellant had possessed the necessary bulk weights he would have been sentenced in accordance with those provisions. In other words, the majority decision permits: (1) a conviction for the possession of heroin with fentanyl considered as adulterant material, and (2) a separate conviction for the possession of fentanyl with heroin considered as adulterant material. Such a result does not comport with the Double Jeopardy Clause, as it would allow two punishments for the same offense.

{¶ 50} Because appellant's conviction for possession of heroin should have been merged with his conviction for aggravated possession of drugs, I must respectfully dissent. Otherwise, I agree appellant's manifest weight challenge was without merit.