[Cite as *State v. Morgan*, 2019-Ohio-2785.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 18CA121 |
| VERNON MORGAN III | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:    Criminal appeal from the Richland County
                            Court of Common Pleas, Case
                            No.2018CR579

JUDGMENT:                   Affirmed

DATE OF JUDGMENT ENTRY:     July 2, 2019

APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

JOSEPH SNYDER                       JOHN O'DONNELL III
Assistant Prosecutor                10 West Newlon Place
38 South Park Street                Mansfield, OH 44902
Mansfield, OH 44902

*Gwin, P.J.*

{¶1} Appellant Vernon Morgan, III ["Morgan"] appeals his convictions and sentences after a jury trial in the Richland County Court of Common Pleas.

*Facts and Procedural History*

{¶2} On July 16, 2018, Morgan was indicted with a two-count indictment. Count One charged Morgan with Possession of Heroin, a felony of the third degree in violation of R.C. 2925.11(A) and (C)(6)(e). Count Two charged Morgan with Aggravated Possession of Drugs [cyclopropylfentanyl], a felony of the fifth-degree in violation of R.C. 2925.11(A) and (C)(1)(a). Both Counts came with three forfeiture specifications each under R.C. 2941.1417. The following evidence was presented during Morgan's jury trial.

{¶3} On March 4, 2018, K.B. was coming home from work. On her way, she noticed a car in her neighbor's driveway pointed towards her house that she did not recognize. After dark, K.B. and her boyfriend were alerted to sounds from outside. K.B. watched an individual grab one of the solar lights in her front yard take off the solar panel and act as he was drinking out of it. When her boyfriend told him to leave, she watched as the man began attempting to get into their neighbor's cars. K.B. then called the police. K.B. watched the individual walk up onto the porch of another house. She watched as the man attempted to break into the house. K.B. called the police again to update them on what was happening.

{¶4} Officer Paul Webb arrived on scene shortly after the calls were made and located Morgan pounding on the front door of a home. Officer Webb had Morgan step away from the porch. Morgan then began yelling and falling down. Officer Webb noticed

that Morgan had bloodshot, glassy eyes, slurred speech, and an odor of alcohol. Morgan told Officer Webb he was at the house because someone at the residence owed him money. The occupant of the house indicated to Officer Webb that he had no idea who Morgan was. It was readily apparent to Officer Webb that Morgan had no idea where he was. Due to Morgan's intoxication, Officer Webb placed him under arrest to take him to the jail to sober up.

{¶5} After placing Morgan in his patrol car, Officer Webb noticed a vehicle parked at 659 Scholl Road that was parked at an angle with only half the car in the driveway. Given the unusual positioning of the car, Officer Webb ran the vehicle through his computer system. He discovered that the vehicle had been stopped a month earlier and that Morgan had been the driver. The license plates did not come back to Morgan but rather a third person. Officer Webb spoke with the residents at the address and they had no idea whose car it was. They indicated to Officer Webb that they wanted the car towed from their driveway. Officer Webb approached the vehicle and shined his flashlight into the car. Inside, Officer Webb saw two cellphones, a knife, money strewn about on the floor of the driver and passenger sides and what he suspected to be heroin in the center console. The money totaled $571 divided among nine or ten bundles.

{¶6} Officer Webb then *Mirandized* Morgan and asked him about the car and the drugs. Morgan told Officer Webb that the car was his, the cellphones were his, the money was his, but the drugs were not his. Morgan told Officer Webb that a male named "Martel" had been driving but he did not know what his last name was or where he had gone. As the vehicle was to be towed, Officer Webb completed an inventory of the vehicle. During

the inventory search, Officer Webb located a name badge for Morgan from his place of employment.

{¶7}    The substance that was removed from the center console of Morgan's car was tested. It was found to be 5.26 grams of cyclopropylfentanyl and heroin. A separate weight for the heroin and the cyclopropylfentanyl was not possible. 2T. at 217-218.[1] The package of heroin contained five individual packages of heroin. Each "chuck" of heroin appeared to be equal in size to one another. Presuming each chunk of heroin was worth $30, the entirety of the heroin found in Morgan's vehicle would be worth $600.

{¶8}    The jury found Morgan guilty of both counts and one forfeiture specification on each count. The remaining forfeiture specifications were dismissed by the state. The trial court sentenced Morgan to thirty-six months on Count One and twelve months on Court Two, consecutive to one another.

*Assignments of Error*

{¶9}    Morgan raises three Assignments of Error,

{¶10}   "I. THE TRIAL COURT ERRED TO DEFENDANT/APPELLANT'S PREJUDICE BY FAILING TO MERGE SENTENCES OF HEROIN AND FENTANYL.

{¶11}   "II. THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

{¶12}   "III. DEFENDANT/APPELLANT WAS UNFAIRLY PREJUDICED BY THE TRIAL COURT ADMITTING QUESTIONING BY THE STATE INFERRING THAT HE WAS A TRAFFICKER."

---

[1] For clarity sake, the transcript of the October 30, 2018 jury trial will be referred to by Volume and Page number as "T."

I.

**{¶13}** In his First Assignment of Error, Morgan argues the offenses of Possession of Heroin and Aggravated Possession of Drugs [cyclopropylfentanyl], should have merged because both drugs were in the same bag and the lab provided only their combined weight.[2]  Morgan did not raise this issue in the trial court.

**STANDARD OF APPELLATE REVIEW.**

**{¶14}** In *State v. Rogers*, 143 Ohio St.3d 385, 2015–Ohio–2459, 38 N.E.3d 860, the Court held,

> An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. Accordingly, an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error.

143 Ohio St.3d 385, ¶ 3.  The Court in *Rogers* reaffirmed that even if an accused shows the trial court committed plain error affecting the outcome of the proceeding, the appellate court is not required to correct it.  Id. at ¶ 23.  The Supreme Court stated:

---

[2] We note that this issue is presently pending before the Ohio Supreme Court.  *See, State v. Pendleton,* Ohio Supreme Court Case No. 2018-1348.  (2nd Dist. Clark Nos. 2017-CA-9 and 2017-CA-17, 2018-Ohio-3199).

[W]e have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and *only* to prevent a manifest miscarriage of justice.'" (Emphasis added.) *Barnes* at 27, 94 Ohio St.3d 21, 759 N.E.2d 1240, *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

*Rogers* at ¶ 23.

**ISSUE FOR APPEAL.**

*Whether the trial court committed plain error affecting the outcome of the proceedings resulting in a manifest miscarriage of justice by failing to merge the offenses in Morgan's case.*

{¶15} R.C. 2941.25, Multiple counts states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶16} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.2d 892, the Ohio Supreme Court revised its allied-offense jurisprudence,

1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors-the conduct, the animus, and the import.

2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

*Ruff,* at syllabus. The Court further explained,

A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation.

* * *

An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*State v. Ruff,* 143 Ohio St.3d 114, ¶25.

**{¶17}** To be guilty of possession under R.C. 2925.11(A), the offender must 'knowingly obtain, possess, or use a controlled substance."

**{¶18}** "The simultaneous possession of different types of controlled substances can constitute multiple offenses under R.C. 2925.11." *State v. Delfino*, 22 Ohio St.3d 270, 490 N.E.2d 884 (1986), syllabus. The Twelfth District, in *State v. Woodard*, 12th Dist. Warren No. CA2016-09-084, 2017-Ohio-6941, 2017 WL 3128807, recently held:

> Possession of heroin and aggravated possession of drugs [fentanyl] are two separate offenses pursuant to R.C. 2925.11(C)(6) and (C)(1). Each possession offense required proof as to the specific drug involved and could not be supported by possession of a different controlled substance. * * * The possession of heroin or fentanyl will never support a conviction for possession of the other*. The fact that the two controlled substances were found in the same baggie is of no consequence.* (Emphasis added.)

*Woodard* at ¶ 35.

**{¶19}** The Eighth District, in *State v. Perry*, 8th Dist. Cuyahoga No. 105501, 2018-Ohio-487, agreed with the Twelfth District's decision and reasoning in *Woodard*, and held that, "pursuant to the allied offense framework set forth in R.C. 2941.25, the offenses of possession of heroin and possession of fentanyl do not merge." *Perry* at ¶ 34. In *State v. Stuckey,* the First Disrict Court of Appeals noted,

> But most appellate districts have affirmatively held that they are not. As the Second Appellate District noted, where "each violation of R.C. 2925.11 requires proof of the identity of a different drug that was possessed * * * 'the legislature intended the possession of the different drug groups to

constitute different offenses.'" *State v. Huber*, 2d Dist. Clark No.2010-CA-83, 2011-Ohio-6175, ¶ 7, *quoting State v. Delfino*, 22 Ohio St.3d 270, 274, 490 N.E.2d 884 (1986). The Fourth Appellate District concluded that the legislature clearly intended that possession of different drug groups constitutes different offenses. *See State v. Deckard*, 2017-Ohio-8469, 100 N.E.3d 53, ¶ 52 (4th Dist.). The Fifth Appellate District has also held that counts of possession of different drug groups are not of similar import. *See State v. Rice*, 5th Dist. Licking No. 2016 CR 00085, 2017-Ohio-1504, ¶ 12 ("It would thus defeat the legislature's intent to merge the drug possession offenses for different drugs into a single offense for purposes of sentencing."). The Sixth Appellate District agrees. *See State v. Ratliff*, 6th Dist. Lucas No. L-16-1187, 2017-Ohio-2816, ¶ 10-11. The Eighth Appellate District has also found that such counts do not merge. *State v. Perry*, 8th Dist. Cuyahoga No. 105501, 2018-Ohio-487, ¶ 32-34. The Ninth Appellate District has also held so. *See State v. Helmick,* 9th Dist. Summit No. 27179, 2014-Ohio-4187, ¶27. The Twelfth Appellate District has likewise concluded that "the simultaneous possession of two types of drugs constitutes two separate offenses that do not merge as allied offenses of similar import under R.C. 2925.11." *State v. Woodard*, 12th Dist. Warren No. CA2016-09-084, 2017-Ohio-6941, ¶ 34. The *Woodard* court further noted that the fact that "the two controlled substances were found in the same baggie is of no consequence" because "[e]ach possession offense required proof as to the specific drug involved and could not be supported

by possession of a different controlled substance." Id. at ¶ 35.  No appellate

district has held that counts for simultaneous possession of two different

controlled substances are subject to merger.

1st Dist. Hamilton No. C-170285, 2018-Ohio-4435, ¶ 11.

**{¶20}** Clearly, if an individual has a baggie of, for example, heroin, in his left pocket and a baggie of fentanyl in his right pocket, he could be convicted and sentenced for each substance.  We see no reason why an individual who chooses to engage in the sale or use of Schedule I controlled substances should escape responsibility for both Schedule I controlled substances simply by mixing one substance into the other.  To do so would encourage those individuals to, for example, simply pour one baggie into the other if they suspected the police were approaching.  It would further encourage individuals to combine and sell mixtures of various Schedule I controlled substances because they can increase the seller's profits and increase the potency of the drugs without fear of a more severe sentence for doing so.  In other words, by combining two controlled substances, drug traffickers could offer their potential buyers a BOGO[3] or 2-for1 sale without being sentenced for selling both Schedule I drugs.  As the Ohio Supreme Court has recognized,

> Fentanyl, a Schedule II controlled substance, is a synthetic opioid
> that is approximately 100 times more potent than morphine and 50 times
> more potent than heroin.  R.C. 3719.41 (Schedule II(B)(9)); United States
> Department of Justice, Drug Enforcement Administration, *Drugs of Abuse,*
> *A DEA Resource Guide* 40 (2017), https://www.dea.gov/pr/multimedia-
> library/publications/drug_of_abuse.pdf#page=40   (accessed   Dec.   12,

---

[3] Buy one, Get one {free}

2017).  Fentanyl and related drugs were involved in nearly 60 percent of Ohio's 4,050 overdose deaths in 2016.  Ohio Dept. of Health, News Release, *Fentanyl, Carfentanil and Cocaine Drive Increase in Drug Overdose Deaths in 2016* (Aug. 30, 2017), http://www.odh.ohio.gov/-/media/ODH/ASSETS/Files/health/injury-prevention/ODH-News-Release---2016-Ohio-Drug-Overdose-Report.pdf?la=en (accessed Dec. 12, 2017). And in the first two months of 2017, approximately 90 percent of unintentional overdose deaths in 25 Ohio counties involved fentanyl, fentanyl analogs or both.  Daniulaityte, Juhascik, Strayer, Sizemore, Harshbarger, Antonides, and Carlson, *Overdose Deaths Related to Fentanyl and its Analogs—Ohio, January–February 2017,* 66 Morbidity & Mortality Weekly Report No. 34, 904, 905–906, https://www.cdc.gov/mmwr/volumes/66/wr/pdfs/mm6634a3.pdf (accessed Dec. 12, 2017), datum corrected in *Errata*: Vol. 66 No. 34, 66 Morbidity & Mortality Weekly Report No. 38, 1030, https://www.cdc.gov/mmwr/volumes/66/wr/pdfs/mm6638a8.pdf (accessed Dec. 12, 2017) (clarifying that the number of counties was 25).

*State v. Poutney,* 152 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶2.  The Court recognized,

> To be sure, enhanced felony prosecution for possession of fentanyl is one weapon in the state's arsenal in the war on drug-related crime.

*Poutney,* ¶3.

{¶21} Accordingly, we find no plain error in the failure to merge Morgan's convictions for two separate Control I substances for sentencing.

{¶22} Morgan's First Assignment of Error is overruled.

II.

{¶23} In his Second Assignment of Error, Morgan argues that his trial attorney was ineffective because he failed to file a motion to suppress the search of the automobile.

**STANDARD OF APPELLATE REVIEW.**

{¶24} To obtain a reversal of a conviction based on ineffective assistance of counsel, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687–688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693(1984). A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other. *Strickland* at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699; *State v. Madrigal*, 87 Ohio St.3d 378, 2000-Ohio-448, 721 N.E.2d 52 (2000).

**Failure to File a Motion to Suppress.**

{¶25} Trial counsel's failure to file a suppression motion does not per se constitute ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000–Ohio–0448; *Accord, State v. Ortiz,* 5th Dist. Stark No. 2015CA00098, 2016-Ohio-354, ¶56. Counsel can only be found ineffective for failing to file a motion to suppress if, based on the record, the motion would have been granted. *State v. Lavelle*, 5th Dist. No. 07 CA 130, 2008–Ohio–3119, at ¶ 47; *State v. Cheatam*, 5th Dist. No. 06–CA–88, 2007–Ohio–

3009, at ¶ 86. The defendant must further show that there is a reasonable probability that the outcome would have been different if the motion had been granted or the defense pursued. *See Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986); *see, also, State v. Santana*, 90 Ohio St.3d 513, 739 N.E.2d 798 (2001), *citing State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990).

**ISSUE FOR APPEAL**

*Whether there is a reasonable probability a motion to suppress the search of the automobile would have been granted.*

*Inventory search.*

**{¶26}** "Inventory searches involve administrative procedures conducted by law enforcement officials and are intended to (1) protect an individual's property while it is in police custody, (2) protect police against claims of lost, stolen or vandalized property, and (3) protect police from dangerous instrumentalities*." State v. Mesa*, 87 Ohio St.3d 105, 108, 1999-Ohio-253, 717 N.E.2d 329, *citing South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). "Because inventory searches are administrative caretaking functions unrelated to criminal investigations, the policies underlying the Fourth Amendment warrant requirement, including the standard of probable cause, are not implicated." *Mesa* at 108, *citing Opperman* at 370. "Rather, the validity of an inventory search of a lawfully impounded vehicle is judged by the Fourth Amendment's standard of reasonableness." *Mesa* at 108.

**{¶27}** In *State v. Hathman*, 65 Ohio St.3d 403, 604 N.E.2d 743(1992), the Ohio Supreme Court analyzed and followed various United States Supreme Court decisions regarding inventory searches and held:

1. To satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine. (*South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; *Colorado v. Bertine* (1987), 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739; and *Florida v. Wells* (1990), 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1, followed.)

2. If, during a valid inventory search of a lawfully impounded vehicle, a law-enforcement official discovers a closed container, the container may only be opened as part of the inventory process if there is in existence a standardized policy or practice specifically governing the opening of such containers. (*Colorado v. Bertine* (1987), 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739; and *Florida v. Wells* (1990), 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1, followed.)"

*Accord*, *State v. Greeno*, 5th Dist. Morgan No. 14AP002, 2014-Ohio-4718, ¶ 18-19.

**{¶28}** In the case at bar, Officer Webb approached the homeowners in whose yard and driveway the car had been left by its occupant. 1T. at 167; 174. This was a consensual encounter; he approached and spoke with the residents just as any member of the public could have done. The owners of the home and driveway in which the automobile had been parked told Officer Webb that they had no idea who owned the car and that they wanted it towed from the driveway. 1T. at 167. Officer Webb shined a flashlight in the interior of the car and noticed in plain view what he believed to be heroin. 1T. at 167. Morgan admitted to Officer Webb that the car and all its contents, with the

exception of the drugs, belonged to him.  1T. at 168.  Morgan claimed he had been a passenger in the car and the driver had left.  1T. at 168.  Morgan was under arrest and not able to move the car from the scene.  Officer Webb testified to the procedure for completing an inventory search of the car.  1T. at 168-169.

{¶29}  Morgan could have no reasonable expectation of privacy because he left his car partially in a driveway and partially in a yard without permission of the homeowners. Any member of the public could have approached the car and looked inside through the windows. When he observed the suspected heroin, Officer Webb did not intrude into a constitutionally protected area. The fact that Officer Webb used a flashlight to better see into the car "trenched upon no right secured…by the Fourth Amendment." *Texas v. Brown,* 460 U.S. 730, 740, 103 S.Ct. 1535, 75 L.Ed.2d 502(1983).

{¶30}  Inventory searches are a "well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371, 107 S.Ct. 738, 741, 93 L.Ed.2d 739, 745 (1987).  *See, also, South Dakota v. Opperman*, 109 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000(1976).  In Ohio, a standard inventory search of a lawfully impounded automobile is permissible.  *State v. Robinson*, 58 Ohio St.2d 478, 12 O.O.3d 394, 391 N.E.2d 317(1979), syllabus.  As the United State Supreme Court noted in *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067, at 1069-1070(1968):

> "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. *Ker v. California*, 374 U.S. 23, 42-43, 83 S.Ct. 1623, 10 L.Ed.2d 726, 743 (1963); *United States v. Lee*,

274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); *Hester v. United States,*

265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924).

**{¶31}** The drugs here involved, contained in center console fell into the plain view

of Officer Webb during the course of a lawful routine inventory of Morgan's car, conducted

in accordance with standard police procedure.

**{¶32}** As there is not a reasonable probability that a motion to suppress the search

of Morgan's car would have been granted, trial counsel was not ineffective in failing to file

a motion to suppress on those grounds.

**{¶33}** Morgan's Second Assignment of Error is overruled.

III.

**{¶34}** In his Third Assignment of Error, Morgan argues that he was unfairly

prejudiced by the admission into evidence during his jury trial of testimony concerning the

characteristics of drug traffickers.

**STANDARD OF APPELLATE REVIEW.**

**{¶35}** "[A] trial court is vested with broad discretion in determining the admissibility

of evidence in any particular case, so long as such discretion is exercised in line with the

rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d

1056 (1991). An appellate court that reviews the trial court's admission or exclusion of

evidence must limit its review to whether the lower court abused its discretion. *State v.*

*Finnerty*, 45 Ohio St.3d 104, 107, 543 N.E.2d 1233, 1237(1989). An abuse of discretion

can be found where the reasons given by the court for its action are clearly untenable,

legally incorrect, or amount to a denial of justice, or where the judgment reaches an end

or purpose not justified by reason and the evidence. *Tennant v. Gallick,* 9th Dist. Summit

No. 26827, 2014-Ohio-477, ¶35; In *re Guardianship of S.H.*, 9th Dist. Medina No. 13CA0066–M, 2013–Ohio–4380, ¶ 9; *State v. Firouzmandi,* 5th Dist. Licking No.2006–CA–41, 2006–Ohio–5823, ¶54.

**ISSUE FOR APPEAL.**

*Whether the trial court abused its discretion by admitting evidence of drug trafficker characteristics.*

{¶36} In *State v. Crotts,* the Ohio Supreme Court explained,

As a legal term, "prejudice" is simply "[d]amage or detriment to one's legal rights or claims." Black's Law Dictionary (8th Ed.1999) 1218. Thus, it is fair to say that all relevant evidence is prejudicial. That is, evidence that tends to disprove a party's rendition of the facts necessarily harms that party's case. Accordingly, the rules of evidence do not attempt to bar all prejudicial evidence—to do so would make reaching any result extremely difficult. Rather, only evidence that is unfairly prejudicial is excludable.

"'Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice. If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403. Emphasis must be placed on the word "unfair." Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. Consequently, if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial. Usually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than

intellect.' " *Oberlin v. Akron Gen. Med. Ctr.* (2001), 91 Ohio St.3d 169, 172, 743 N.E.2d 890, *quoting Weissenberger's Ohio Evidence* (2000) 85–87, Section 403.3.

104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 23-24.

**{¶37}** We note that any error will be deemed harmless if it did not affect the accused's "substantial rights." Before constitutional error can be considered harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *United States v. Chapman*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705(1967). Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶78, *citing Chapman; State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623(1976), paragraph three of the syllabus, *vacated in part on other grounds Lytle v. Ohio*, 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154(1978). *See also, State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶177.

**{¶38}** In the case at bar, Morgan cites the following testimony as irrelevant and inadmissible,

> Q.     Okay. And with all of those drug buys, have you become familiar with the general indicators of drug trafficking?
>
> A.     Yes, ma'am.
>
> Q.     And what are some of the things that you look for?
>
> MR. CORLEY: Objection, Your Honor. This is not a trafficking case.
>
> THE COURT: I think these are general questions, so I will allow it.

A.     You asked me what I believe a normal drug trafficker -- what type of indicators for them?

Q     Yes.

A.     Large amounts of money, large amounts of drugs, numerous cell phones, different vehicles.  They use Facebook, Twitter, any social media accounts, photos.  There's a lot of indicators that we investigate to prove that somebody is a drug dealer.

Q.     Okay.  Hypothetically, if you were to locate 5.2 grams of heroin on an individual, would you associate that with a personal-use amount?

A.     5.2 grams?

Q.     Yeah.

* * *

A.     So if this is heroin, there's five individual packages of heroin.  This is indicative of what a drug dealer would carry on them.  So if they were going to meet with somebody, say a drug user that wanted to buy a specific amount, $20, $40, $60 worth, they would already have the packages prepackaged.  Say they want $20.  If one of these packages is worth $20, he would have to hand over one package, or if they wanted $60 worth, they would hand over three packages.  To me, this looks like something a drug dealer would carry on them.  They're prepackaged in cellophane and also amounts already cut off the block that they would just have to wrap in Saran wrap.  They're all consistently the same size.  If you look at the bottom of

the package, other than what's on the bottom, all the packages, all the chunks, look specifically the same way. My guess would be -- and this is just a guess -- that whoever packaged this was making these chunks the same size, and these were prepackaged amounts probably, in my opinion, maybe $20 or $30 worth, each package.

* * *

Q. Sure. Thank you. Let's talk a little bit about money. Are there any particular denominations of money that stand out to you when you're looking at a trafficking case?

* * *

Q. Okay. Thank you. How about multiple cell phones found near narcotics? What would that tell you?

A. Sure. So what happens is, drug dealers are intelligent, and they know, as investigators, we have investigative tools that we can use to find out who is selling drugs, where they're selling, stuff of that nature. So the drug dealers like to change phones up all the time. They will go get prepaid phones, Cricket Wireless from Walmart or PagePlus from one of the Circle Ks or something of that nature, something that they can pay $50, Boost Mobile or something else.

* * *

1T. at 183-187.

{¶39} Morgan was indicted for possession of drugs, not trafficking in drugs. However, the Indictment also contained a forfeiture specification that was tried to the jury.

2T. at 243. In a criminal forfeiture proceeding, where the specification was included in the charging instrument and the defendant pleads guilty to or is convicted of an offense, "the trier of fact shall determine whether the person's property shall be forfeited." R.C. 2981.04(B); see also R.C. 2941.1417(B) ("The trier of fact shall determine whether the property is subject to forfeiture."). In the case at bar, the indictment properly charged the forfeiture specification with the drug possession charges. Thus, the state was required to prove that the items were instrumentalities used in the commission of any of the felony drug possession offenses. Accordingly, the testimony had relevance to the issue of whether the cell phones and money found in Morgan's car were used or were intended to be used in the commission or facilitation of the drug possession offenses.

{¶40} In the alternative, we conclude, from a review of the entire record, that any error in the admission of the evidence would be "harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Harrington v. California*, 395 U.S. 250, 89 S .Ct. 1726, 23 L.Ed.2d 284(1969); *Schnabel v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340(1972).

{¶41} Morgan admitted to Officer Webb that the car and all its contents, with the exception of the drugs, belonged to him. 1T. at 168. Morgan claimed he had been a passenger in the car and the driver had left. 1T. at 168. All items were found in plain view inside the passenger compartment of Morgan's car. Accordingly, there is no reasonable possibility that testimony contributed to Morgan's conviction, the error is therefore harmless and therefore will not be grounds for reversal. *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶78, *citing Chapman; State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623(1976), paragraph three of the syllabus, *vacated in part*

*on other grounds Lytle v. Ohio*, 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154(1978).

*See also, State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶177.

{¶42} Morgan's Third Assignment of Error is overruled.

{¶43} The judgment of the Richland County Court of Common Pleas is affirmed.


By Gwin, P.J.,

Wise, John, J., and

Wise, Earle, J., concur