[Cite as *State v. Daniels*, 2020-Ohio-1496.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                    No. 108299

    v.                          :

MICHAEL DANIELS, JR.                    :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 16, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-626775-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jeffrey M. Maver and Christopher D. Schroeder, Assistant Prosecuting Attorneys, *for appellee.*

Dale M. Hartman, *for appellant.*

LARRY A. JONES, SR., J.:

{¶ 1} Defendant-appellant Michael Daniels ("Daniels") appeals his convictions for trafficking in drugs and having weapons while under disability. Finding no merit to the appeal, we affirm.

{¶ 2} In 2018, Daniels was charged with three counts of trafficking in drugs, felonies of the first degree; three counts of possession of drugs, felonies of the first degree; one count of possession of criminal tools, a felony of the fifth degree; and one count of having weapons while under disability, a felony of the third degree. The trafficking counts included schoolyard, juvenile, and one-year firearm specifications; the drug possession counts included one-year firearm specifications; and all but the weapons while under disability count included forfeiture specifications.

{¶ 3} Pursuant to a search warrant, the police seized 50 grams of cocaine and 27 grams of a mixture of heroin and fentanyl from Daniels's house, which was across from a school. According to the investigating detective, there was a juvenile present and drugs were accessible to anyone who was in the house. The detective estimated that the police seized "well over a hundred doses of fentanyl and heroin mixed, along with well over a hundred doses of cocaine mixture, * * * that amount of drugs put on the street could be a mass devastation." The police also recovered three firearms, $6,131, and multiple cell phones.

{¶ 4} Pursuant to a plea agreement with the state of Ohio, Daniels agreed to plead guilty to three counts of trafficking in drugs, felonies of the third degree with a one-year firearm specification, and one count of having weapons while under disability. He also agreed to forfeit the firearms, money, and cell phones.

{¶ 5} The trial court sentenced Daniels to a total of ten and one-half years in prison and a $5,000 fine.

{¶ 6} Daniels filed a timely notice of appeal and raises the following assignments of error for our review; further facts will be discussed under the appropriate assigned errors:

I. The trial court violated Crim.R. 11(C) by failing to explain the rights that Appellant waived with his guilty plea.

II. The trial court violated Appellant's due process right by failing to specifically inquire of Appellant whether he understood the nature of the constitutional rights enumerated in Crim.R. 11(C).

III. Appellant's guilty plea was not knowingly, willingly or intelligently made, violating Crim.R. 11 and his constitutional rights, because the trial court did not ask Appellant if he understood the nature of the crimes, so the trial court erred by accepting the guilty plea.

IV. The court erred by failing to merge all or some of the charges.

{¶ 7} In the first three assignments of error, Daniels contends that the trial court violated his constitutional rights by failing to comply with Crim.R. 11 before accepting his guilty plea.

{¶ 8} The purpose of Crim.R. 11(C) is to provide a defendant with relevant information so that he or she can make a voluntary and intelligent decision whether to plead guilty. *State v. Ballard*, 66 Ohio St.2d 473, 480, 423 N.E.2d 115 (1981). Before accepting a guilty plea in a felony case, a court must comply with Crim.R. 11(C) and "conduct an oral dialogue with the defendant to determine that the plea is voluntary and the defendant understands the nature of the charges and the maximum penalty involved, and to personally inform the defendant of the

constitutional guarantees he [or she] is waiving by entering a guilty plea." *State v. Martin*, 8th Dist. Cuyahoga Nos. 92600 and 92601, 2010-Ohio-244, ¶ 5.

{¶ 9} A trial court must strictly comply with the Crim.R. 11(C)(2)(c) requirements that relate to the waiver of constitutional rights. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 18. With respect to the nonconstitutional requirements set forth in Crim.R. 11(C)(2)(a) and (b), reviewing courts consider whether there was substantial compliance with the rule. *State v. Hill*, 8th Dist. Cuyahoga No. 106542, 2018-Ohio-4327, ¶ 8. "'Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his [or her] plea and the rights he [or she] is waiving.'" *Id.*, quoting *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990); *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977). Additionally, before a plea will be vacated due to a violation of the defendant's nonconstitutional rights, the defendant must show prejudice. *Martin* at ¶ 7. "The test for prejudice is whether the plea would have otherwise been made." *Id.*, citing *Nero* at *id.*

{¶ 10} "The standard for reviewing whether the trial court accepted a plea in compliance with Crim.R. 11(C) is a de novo standard of review." *State v. Cardwell*, 8th Dist. Cuyahoga No. 92796, 2009-Ohio-6827, ¶ 26, citing *Stewart*. The appellate court must review the totality of the circumstances and determine whether the plea hearing complied with Crim.R. 11(C). *State v. Hudson-Bey*, 8th Dist. Cuyahoga No. 104245, 2016-Ohio-7722, ¶ 7.

{¶ 11} Daniels first contends that the trial court did not substantially comply with Crim.R. 11(C)(2)(c)'s requirement that he understand the rights he was waiving by entering a guilty plea.

> A trial court must strictly comply with Crim.R. 11(C)(2)(c) and orally advise a defendant before accepting a felony plea that the plea waives (1) the right to a jury trial, (2) the right to confront one's accusers, (3) the right to compulsory process to obtain witnesses, (4) the right to require the state to prove guilt beyond a reasonable doubt, and (5) the privilege against compulsory self-incrimination. When a trial court fails to strictly comply with this duty, the defendant's plea is invalid.

*Veney* at syllabus.

{¶ 12} Strict compliance equates to literal compliance with Crim.R. 11(C)(2)(c), but a rote recitation of the rule is not required. *Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, at ¶ 18, 27 (exact language is preferred, but rote recitation of the rule is not required for strict compliance). Failure to use the exact language contained in Crim.R. 11(C) in informing a criminal defendant of his or her constitutional rights is not grounds for vacating a plea as long as the record shows that the trial court explained these rights in a manner "reasonably intelligible" to the defendant. *Id.* at ¶ 18, citing *Ballard*, 66 Ohio St.2d at 479-480, 423 N.E.2d 115.

{¶ 13} A review of the transcript of the plea colloquy shows that the trial court informed Daniels of his right to a jury trial, his right to counsel, his right to have his attorney cross-examine all witnesses and subpoena witnesses, i.e., his right to confront his accusers, right to have the state prove his guilt beyond a

reasonable doubt, that his plea of guilty was a complete admission of his guilt, and that he could not be forced to testify against himself. Daniels stated both that he understood his rights and understood that he was giving up his rights by entering a guilty plea. Based on the record before us, the trial court strictly complied with the requirements of Crim.R. 11(C)(2)(c) with respect to the waiver of Daniels's constitutional rights.

{¶ 14} Daniels next contends that the trial court failed to comply with Crim.R. 11(C)(2)(a) by failing to determine that he knew the nature of the charges against him.

{¶ 15} Again, with respect to Crim.R. 11(C)(2)(a), substantial compliance is sufficient. *Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, at ¶ 14. Pursuant to Crim.R. 11(C)(2)(a), before accepting a guilty plea in a felony case, the trial court must address the defendant personally and "[d]etermine that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved."

{¶ 16} The record reflects that the trial court complied with the requirements of Crim.R. 11(C)(2)(a) by informing Daniels of each of the charges he was pleading guilty to, the felony levels, and the penalties involved including the maximum penalties for each offense. The court also expressly told Daniels that he would be sentenced to prison by informing him that he was ineligible for probation due to the firearm specifications. The court discussed that the sentence could "be made to run concurrent, all at the same time, or consecutive, one to follow the

other, or any combination, thereof." The court discussed postrelease control, the penalties for violating postrelease control, and the possibility of earning early termination of his prison sentence.

{¶ 17} Daniels contends that the trial court should have explained the elements of the crimes to him. But Crim.R. 11(C)(2) does not require the trial court to inform the accused of the actual elements of the charged offense. *See State v. Carpenter*, 8th Dist. Cuyahoga No. 81571, 2003-Ohio-3019, ¶ 2 ("The term 'nature of the charge' is not defined in the Rules of Criminal Procedure, but we have never interpreted that phrase to require the court to inform the accused of the actual elements of the charged offense").

{¶ 18} Nothing in the record indicates that Daniels, who had previously been convicted of drug-related offenses, did not understand the nature of the charges to which he pleaded guilty. When the court inquired if there was anything "about this case or these proceedings that you do not understand," Daniels answered: "I understand everything." Thus, the record reflects that Daniels expressed his understanding of the trial court's advisements.

{¶ 19} Daniels filed a pretrial motion to suppress and motion to reveal the identity of the confidential informant, both of which the trial court denied. Daniels contends that "no one" advised him that he was waiving his right to appeal the court's ruling on pretrial motions by entering a guilty plea, and, had he known he could not appeal the ruling, he would have not pleaded guilty. Although the trial court did tell Daniels he was waiving his right to appeal these rulings by pleading

guilty, there is no evidence Daniels did not understand the rights he was waiving by pleading guilty or that he would not have pleaded guilty had he known he would not be allowed to appeal the rulings. Moreover, Daniels's appellate rights are governed by Crim.R. 32, which requires a trial court to make certain advisements at sentencing, not at the plea hearing.

{¶ 20} Our review of the record reflects that Daniels's plea was knowingly, intelligently, and voluntarily made with a complete understanding of the consequences. The case was thoroughly pretried and Daniels, who was facing a maximum sentence of 37 years in prison, minimized his possible sentence to 13 years in prison through his plea bargain with the state of Ohio. As mentioned, the trial court sentenced him to a non-maximum ten and one-half years in prison.

{¶ 21} In light of the above, the first, second, and third assignments of error are overruled.

{¶ 22} In the fourth assignment of error, Daniels argues that his convictions for trafficking in drugs should merge.

{¶ 23} We apply a de novo standard of review when determining whether two or more offenses are allied offenses of similar import. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28. Pursuant to R.C. 2941.25(A), "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." However,

> [w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his [or her] conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25(B).

{¶ 24} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Ohio Supreme Court held that if a defendant's conduct supports multiple offenses, the defendant can be convicted of all of the offenses if any one of the following is true: (1) the offenses are dissimilar in import or significance — in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation. *Id.* at ¶ 25. "Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus. Therefore, in determining whether offenses are allied under R.C. 2941.25, courts are instructed to consider three separate factors — the conduct, the animus, and the import. *Id.* at paragraph one of the syllabus.

{¶ 25} In this case, Daniels pleaded guilty to trafficking three different kinds of drugs under R.C. 2925.03(A)(2) — heroin, cocaine, and fentanyl. R.C. 2925.03(A)(2) states:

(A) No person shall knowingly do any of the following:

\* \* \*

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

{¶ 26} Daniels claims that the counts should merge because the charges arose under the same incident, the drugs were offered for sale together, and the heroin and fentanyl were mixed together.

{¶ 27} We find no merit to Daniels's argument that his trafficking in cocaine charge merges with his other trafficking charges; the police found the cocaine packaged separately from the heroin and fentanyl. *See State v. Bradley*, 2015-Ohio-5421, 55 N.E.3d 580, ¶ 39 (8th Dist.) (defendant conceded that his trafficking in heroin and trafficking in cocaine convictions do not merge pursuant to *Ruff* where the cocaine and heroin were packaged separately but placed together in one bag).

{¶ 28} We next turn to the issue of whether the trafficking in heroin and trafficking in fentanyl convictions should merge because the drugs were mixed and found in a single bag. This court has previously held that simultaneous possession of different types of drugs do not merge. *State v. Perry*, 8th Dist. Cuyahoga No. 105501, 2018-Ohio-487; *State v. Santiago*, 8th Dist. Cuyahoga No. 101601, 2015-Ohio-1300. In *Perry*, the defendant was charged with possession of heroin and possession of fentanyl after police recovered .8 grams of a mixture of the two drugs in a folded page of the vehicle's user manual and laying on the driver's side

floorboard.  The defendant driver fled the car moments before the police located the drugs.  This court agreed with the reasoning of *State v. Woodard*, 12th Dist. Warren No. CA2016-09-084, 2017-Ohio-6941, that the possession of heroin, a Schedule I drug, or fentanyl, a Schedule II drug, will never support a conviction for possession of the other because each possession offense required proof as to the specific drug involved and could not be supported by possession of a different controlled substance.  *Perry* at ¶ 33, citing *Woodard* at ¶ 35.

{¶ 29} The dissent in *Woodard* would have merged the possession offenses. "Under these circumstances, I do not see the societal benefit to convicting a drug user on two charges from what is generally one criminal act."  *Woodard* at ¶ 46.  The dissent noted, however, that its analysis was limited to possession offenses.  "Drug traffickers, the individuals adding these highly dangerous compounds and fueling the opioid epidemic, would not be covered under such a merger analysis."  *Woodard* at ¶ 46, fn. 5.

{¶ 30} The dissent in this case, considering *Woodard*, opines that a defendant "cannot be convicted and sentenced for trafficking both drugs" without proof that it was that defendant "who comingled and/or cut the drugs."  We disagree.  The dissent places the emphasis the defendant's conduct, but, under *Ruff*, courts consider three separate factors — the conduct, the animus, and the import — and a defendant may be convicted and sentenced for multiple offenses if *any* one of the factors applies.  *See Ruff* at ¶ 16 (stating that its previous analysis

in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, which emphasized a defendant's conduct in evaluating whether offenses are allied, was "incomplete.") Moreover, we decline to find that the legislature intended that drug users who simultaneously possess two drugs can be convicted of two offenses while drug dealers, those who are lacing the drugs and putting the deadly combination of drugs out on the streets, can only be convicted of one offense.

{¶ 31} To support his position that his trafficking in heroin and trafficking in fentanyl convictions should merge, Daniels cites this court's recent decision in *State v. Price*, 8th Dist. Cuyahoga No. 107096, 2019-Ohio-1642, *discretionary appeal allowed*, 2019-Ohio-3797, 131 N.E.3d 952. In *Price*, the defendant was charged in relation to the overdose death of a person he supplied with heroin and fentanyl — the drugs were comingled in a single bag. Price was indicted on 22 counts and found not guilty of involuntary manslaughter but guilty of all other counts, including trafficking in heroin, possession of heroin, trafficking in fentanyl, possession of fentanyl, corrupting another with drugs (heroin), corrupting another with drugs (fentanyl), and various other drug-related crimes.

{¶ 32} At sentencing, the trial court merged the trafficking of heroin with possession of heroin and trafficking of fentanyl with possession of fentanyl, among other charges. On appeal, one issue Price raised was whether the two counts of corrupting another with drugs should have merged. This court held that the trial court erred in failing to merge the two counts because (1) "there was a single course of conduct underlying Price's convictions for corrupting another with drugs

— he furnished the victim with a single bag containing a mixture of heroin and fentanyl"; (2) the harm, the victim's death, was the same; and (3) the offenses were not committed separately. *Id.* at ¶ 82.

{¶ 33} The case at bar is distinguishable. "A defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense." *Bradley*, 2015-Ohio-5421, 55 N.E.3d 580, at ¶ 37. In *Price*, the harm that resulted from each corrupting another with drugs offense was the same — the death of one person to whom the defendant supplied drugs. Thus, the offenses merged. But in this case, where we are concerned with the crimes of trafficking in fentanyl and trafficking in heroin, we do not have a single identifiable harm. Moreover, although the defendant in *Price* raised the issue of allied offenses at the trial-court level, the trial court declined to merge the trafficking in heroin and trafficking in fentanyl convictions. The issue was not raised on appeal and this court did not sua sponte raise the issue. This court has previously raised and addressed, sua sponte, allied offenses issues not raised by an appellant. *See State v. Smith*, 8th Dist. Cuyahoga No. 45000, 1983 Ohio App. LEXIS 15959 (Feb. 3, 1983). If this court determined that trafficking in heroin and trafficking in fentanyl were allied offenses then this court could have sua sponte raised the issue in *Price*.

{¶ 34} We further note that post-*Ruff*, appellate districts throughout the state have consistently held that possession or trafficking of different drug groups

constitutes different offenses. *See State v. Stuckey*, 1st Dist. Hamilton No. C-170285, 2018-Ohio-4435; *State v. Pendleton*, 2d Dist. Clark No. 2017-CA-17, 2018-Ohio-3199, *discretionary appeal allowed*, 154 Ohio St.3d 1443, 2018-Ohio-4962, 113 N.E.3d 551; *State v. Howard*, 2017-Ohio-9392, 103 N.E.3d 108 (4th Dist.); *State v. Morgan*, 5th Dist. Richland No. 18CA121, 2019-Ohio-2785; *State v. Ratliff*, 6th Dist. Lucas No. L-16-1187, 2017-Ohio-2816; *State v. Hunt*, 2018-Ohio-815, 108 N.E.3d 141 (7th Dist.); *State v. Dodson*, 9th Dist. Medina No. 16CA0020-M, 2017-Ohio-350; *Woodard*, 12th Dist. Warren No. CA2016-09-084, 2017-Ohio-6941. Only one district has held otherwise. *See State v. Lee*, 2018-Ohio-4376, 121 N.E.3d 737 (11th Dist.), *discretionary appeal allowed*, 154 Ohio St.3d 1477, 2019-Ohio-169, 114 N.E.3d 1205 (conflict case is *Pendleton*). As noted, heroin is a Schedule I drug and fentanyl is a Schedule II drug; therefore, trafficking in heroin and trafficking in fentanyl are not allied offenses of similar import.

{¶ 35} The dissent also takes issue with this court's holding in *Perry*. The doctrine of stare decisis, however, requires this court to adhere to *Perry* as the law of this district. Moreover, the facts of this case support a finding that the offenses are not allied. "[O]ffenses are not allied offenses of similar import if they are not alike in their significance and their resulting harm." *Ruff* at ¶ 21. Police seized large amounts of a mixture of heroin and fentanyl, "over 100 doses" from Daniels's house. The investigating detective stated at the sentencing hearing that "that amount of drugs put on the street could be a mass devastation." We cannot overstate the harm that fentanyl has wrought on this state. As the Ohio Supreme

Court has noted: "Fentanyl, a Schedule II controlled substance, is a synthetic opioid that is approximately 100 times more potent than morphine and 50 times more potent than heroin." *State v. Pountney*, 152 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶ 2, citing R.C. 3719.41 (Schedule II(B)(9)); U.S. Centers for Disease Control, *Opioid Overdose*, https://www.cdc.gov/drugoverdose/data fentanyl /fentanyl.html (accessed Feb. 5, 2020). In 2017, Ohio had the country's second highest rate of drug overdose deaths involving opioids. National Institute on Drug Abuse, *Ohio Opioid Summary* (Mar. 2019), www.drugabuse.gov/opioid-summaries-by-state/ohio-opioid-summary (accessed Feb. 5, 2020). In 2018, fentanyl was involved in nearly 73 percent of Ohio's overdose deaths. Ohio Department of Health, *2018 Ohio Drug Overdose Report: General Findings* (Dec. 4, 2019), https://odh.ohio.gov/wps/portal/gov/odh/know-our-programs/violence -injury-prevention-program/media/2018-ohio-drug-overdose-report (accessed Feb. 5 (accessed Feb. 5, 2020). In 2009, there were 72 unintentional drug overdose deaths involving fentanyl. In 2017, there were 3,431 deaths. *Id.* In comparison, in 2009 there were 283 unintentional drug overdose deaths involving heroin, in 2017 there were 987. *Id.* Thus, while heroin is deadly, fentanyl has shown to be far more deadly. We conclude that trafficking in heroin and trafficking in fentanyl pose separate and identifiable harms under *Ruff* and do not merge as allied offenses.

{¶ 36} Again, pursuant to *Ruff*, we consider not only the conduct of the defendant but also whether the offenses are of dissimilar import. Finding that

trafficking in heroin and trafficking in fentanyl are offenses of dissimilar import for the reasons stated above, the trial court did not err when it failed to merge Daniels's trafficking convictions.

{¶ 37} The fourth assignment of error is overruled.

{¶ 38} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

FRANK D. CELEBREZZE, JR., J., CONCURS;
MARY J. BOYLE, P.J., CONCURS IN PART
AND DISSENTS IN PART WITH SEPARATE
OPINION

MARY J. BOYLE, P.J., CONCURRING IN PART AND DISSENTING IN PART WITH SEPARATE OPINION:

{¶ 39} Respectfully, I concur in part and dissent in part. It is my view that under the facts of this case, Daniels's trafficking heroin and trafficking fentanyl

offenses should merge for purposes of sentencing. I agree with all other aspects of the majority opinion, including the holding that Daniels's offense for trafficking cocaine does not merge with the other two trafficking offenses.

{¶ 40} Under both the United States and Ohio Constitutions, the Double Jeopardy Clause protects against three abuses: "(1) 'a second prosecution for the same offense after acquittal,' (2) 'a second prosecution for the same offense after conviction,' and (3) 'multiple punishments for the same offense.'" *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10, quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). This case implicates the prohibition against multiple punishments for the same offense. When multiple punishments are imposed in the same proceeding, the Double Jeopardy Clause prevents the trial court from imposing a greater punishment than the legislature intended. *See State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 16.

{¶ 41} Ohio's allied offense statute, R.C. 2941.25, codifies the double jeopardy protection against multiple punishments for the same offense. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 23. This statute provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more

offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 42} In *Ruff*, the Ohio Supreme Court set forth the test for determining whether multiple offenses are allied offenses of similar import. The Ohio Supreme Court stated that "courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?" *Ruff* at ¶ 31. If the answer to any of the questions is yes, then the defendant may be convicted of separate offenses. *Id.* The Ohio Supreme Court made clear that "[t]he conduct, the animus, and the import must all be considered." *Id.* Two or more offenses have dissimilar import "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 23.

{¶ 43} In this case, police found two packages of drugs in Daniels's home. One contained 50 grams of cocaine and one contained 27 grams of a mixture of heroin and fentanyl. Daniels was convicted of three counts of trafficking — cocaine, heroin, and fentanyl — despite the fact that the heroin and fentanyl were comingled in one package and were indistinguishable from one another.

{¶ 44} Applying *Ruff* to the facts of this case, the trafficking heroin and trafficking fentanyl offenses resulted from Daniels possessing one bag of comingled heroin and fentanyl such that the amount rose to the level of trafficking.

There is no evidence that Daniels committed the offenses separately or with a separate animus or motivation, that there were separate victims, or that the harm caused was separate and identifiable. And while there arguably may be separate harms that can occur from trafficking heroin and fentanyl, the facts of this case do not support such a conclusion. Thus, it is my view that Daniels's trafficking heroin and trafficking fentanyl offenses were allied offenses of similar import that should merge for purposes of sentencing.

{¶ 45} Additionally, I agree with Daniels that under *State v. Price*, 8th Dist. Cuyahoga No. 107096, 2019-Ohio-1642, his trafficking heroin and trafficking fentanyl offenses should have merged for purposes of sentencing.[1] The majority finds that *Price* is distinguishable, stating that because there was one death, "the harm that resulted from each corrupting another with drugs was the same." I disagree that *Price* is distinguishable.

{¶ 46} In *Price*, this court held that corrupting another with fentanyl and corrupting another with heroin were allied offenses of similar import, stating the following:

> Here, there was a single course of conduct underlying Price's convictions for corrupting another with drugs — he furnished the victim with a single bag containing a mixture of heroin and fentanyl. Price did not furnish the victim with the drugs in separate actions or sales or even heroin in one bag and fentanyl in another; instead, the

[1]The Ohio Supreme Court accepted *Price* for discretionary review (*see State v. Price*, *09/25/2019 Case Announcements*, 2019-Ohio-3797, 2019 Ohio LEXIS 1907 (Sept. 25, 2019)) and as a certified conflict (*State v. Price*, *09/25/2019 Case Announcements*, 2019-Ohio-3797, 131 N.E.3d 952 (Sept. 25, 2019)), regarding a different issue than what is presented in this case. Oral arguments have not yet been scheduled.

drugs were mixed together in one bag and furnished at the exact same time. Further, the harm resulting from Price's conduct, the victim's death, was the same and indistinguishable. Finally, the record establishes that Price did not commit the offenses separately or with separate animuses or motivations. Therefore, under *Ruff*, Price's convictions for corrupting another with drugs are allied offenses of similar import and should have merged for purposes of sentencing.

*Id.* at ¶ 82.

{¶ 47} It is my view that although the offenses in *Price* were corrupting another rather than trafficking, the reasoning is analogous to this case.

{¶ 48} In support of its position that "convictions for trafficking different types of drugs do not merge as allied offenses because each is recognized as separate offenses under the revised code," the majority cites to two cases: (1) *State v. Santiago*, 8th Dist. Cuyahoga No. 101601, 2015-Ohio-1300 and (2) *State v. Perry*, 8th Dist. Cuyahoga No. 105501, 2018-Ohio-487. *Santiago* does not support the majority's position, however, because although this court discussed the "simultaneous possession" of two drugs, there is nothing in the opinions to indicate whether "simultaneous possession" meant that the two drugs were comingled in one bag and indistinguishable from one another. One can simultaneously possess two different drugs at the same time. For example, one could have a bag of heroin and a separate bag of fentanyl in his or her pocket. One can even simultaneously possess two drugs in a single bag that are not comingled because they are in different forms and can therefore be separated and distinguished from one another. For example, one could have a rock of cocaine and heroin powder in the same bag. There is no question that under either of these

scenarios, a defendant can be convicted of separate offenses. Thus, *Santiago* does not support the majority's position because it is not clear from the opinion what sort of "simultaneous possession" was involved in that case.

{¶ 49} *Santiago* is problematic for another reason. *Santiago* was decided after the Ohio Supreme Court set forth the new test for determining whether multiple offenses are allied offenses of similar import in *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, but *Santiago* relied on cases that were decided before *Ruff*, including *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. *Ruff*, however, rendered the allied-offenses test in *Johnson* "largely obsolete." *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 11.

{¶ 50} *Santiago* also relied on *State v. Heflin*, 6th Dist. Lucas No. L-11-1173, 2012-Ohio-3988, which was also decided before *Ruff*. *Santiago* quoted *Heflin* and concluded:

> "[C]onvictions for simultaneous possession of cocaine and heroin are not subject to merger as allied offenses of similar import under R.C. 2941.25." The [*Heflin*] court reasoned that "possession of different drug groups constitutes different offenses under R.C. 2925.11" and the "possession of either cocaine or heroin will never support a conviction for possession of the other."

*Santiago* at ¶ 11, quoting *Heflin*. The language used by *Heflin*, "possession of either cocaine or heroin will never support a conviction for possession of the other," came directly from *Johnson*, which was the law at the time *Heflin* was decided *but it was not the law* at the time *Santiago* was decided; *Ruff* was.

{¶ 51} Not only was *Heflin* decided before *Ruff*, it is not clear from the opinion if the heroin and cocaine were found in a single plastic bag and were comingled such that one could not differentiate between the two. Thus, *Heflin* also does not apply here because it is factually distinguishable.

{¶ 52} Therefore, neither *Santiago* nor *Heflin* support the majority's holding in the present case that the two trafficking offenses are not allied offenses — because their facts are distinguishable and their legal analyses rely on old allied-offenses law.

{¶ 53} In the third case cited by the majority, *Perry*, 8th Dist. Cuyahoga No. 105501, 2018-Ohio-487, the defendant was convicted of possessing heroin and fentanyl. He argued that the convictions should have merged. This court does not explicitly state in *Perry* that the heroin and fentanyl were found comingled and indistinguishable in the same bag, but we can presume that they were because we stated that the police found "0.8 grams of what was later identified as heroin and fentanyl." *Id.* at ¶ 6. We explained in *Perry:*

> This court has previously held that the simultaneous possession of two types of drugs constitutes two separate offenses that do not merge as allied offenses of similar import under R.C. 2925.11. *State v. Santiago*, 8th Dist. Cuyahoga No. 101601, 2015-Ohio-1300, ¶ 12. In *Santiago*, this court found that the defendant's simultaneous possession of heroin and cocaine, each recognized as a separate offense under R.C. 2925.11, did not constitute allied offenses of similar import. *Id.* This court cited to *State v. Heflin*, 6th Dist. Lucas No. L-11-113, 2012-Ohio-3988, where the defendant kept two different drugs, cocaine and heroin, in a single plastic bag. The *Heflin* court held that convictions for simultaneous possession of cocaine and heroin are not subject to merger as allied offenses of similar import under R.C. 2941.25 because "'possession of different drug

groups constitutes different offenses under R.C. 2925.11'" and the "'possession of either cocaine or heroin will never support a conviction for possession of the other.'" *Santiago* at ¶ 11, quoting *Heflin* at ¶ 14.

More recently, in *State v. Woodard*, 12th Dist. Warren No. CA2016-09-084, 2017-Ohio-6941, ¶ 35, the court found that "the possession of heroin or fentanyl will never support a conviction for possession of the other. The fact that the two controlled substances were found in the same baggie is of no consequence." The court reasoned that "[e]ach possession offense required proof as to the specific drug involved and could not be supported by possession of a different controlled substance."

*Perry* at ¶ 32 and 33.

{¶ 54} This court relied on three cases in *Perry*: *Santiago*, *Heflin*, and *Woodard*. I have already explained why *Santiago* and *Heflin* do not support the position that two drugs comingled and indistinguishable in the same bag are allied offenses of similar import. But the third case cited by the *Perry* majority, *Woodard*, is arguably the best support for concluding that possession of separate drugs comingled in the same bag and indistinguishable from one another are not allied offenses. But when one examines the majority opinion in *Woodard* closely (there is also a dissenting opinion in the case), one discovers that its legal reasoning is problematic as well.

{¶ 55} *Woodard* is, at least, more on point with the facts here. Woodard was convicted of possession of heroin and aggravated possession of fentanyl. The heroin and fentanyl in *Woodard* were mixed together in the same bag as "an off-white powdery substance," and just as in the present case, the heroin and fentanyl could not be distinguished from one another. The *Woodard* majority concluded

that Woodard's convictions for possession of heroin and aggravated possession of fentanyl were not allied offenses. In reaching this conclusion, the *Woodard* majority stated:

> Despite appellant's arguments to the contrary, his convictions for possession of heroin and aggravated possession of drugs are not allied offenses of similar import. This court and many others have held that the simultaneous possession of two types of drugs constitutes two separate offenses that do not merge as allied offenses of similar import under R.C. 2925.11. *See, e.g., State v. Graves*, 12th Dist. Clermont No. CA2015-03-022, 2015-Ohio-3936, ¶ 43-44 (finding defendant's convictions for trafficking in heroin and aggravated trafficking in drugs did not merge); *State v. Daniels*, 12th Dist. Fayette No. CA2014-05-010, 2015-Ohio-1346, ¶ 16-17 (finding defendant's convictions for trafficking in heroin, trafficking in cocaine, and trafficking in methadone did not merge as "[e]ach trafficking offense required proof specific to that drug and could not be supported by trafficking in a different controlled substance"); *State v. Helmick*, 9th Dist. Summit No. 27179, 2014-Ohio-4187, ¶ 27 (finding defendant's convictions for aggravated possession of drugs and possession of marijuana did not merge as allied offenses); *State v. Santiago*, 8th Dist. Cuyahoga No. 101601, 2015-Ohio-1300, ¶ 12 (finding the "simultaneous possession of heroin and cocaine, each recognized as a separate offense under R.C. 2925.11, does not constitute allied offenses of similar import for sentencing"); *State v. Heflin*, 6th Dist. Lucas No. L-11-1173, 2012-Ohio-3988, ¶ 14 (finding defendant's possession of cocaine and possession of heroin did not merge as allied offenses of similar import as "possession of either cocaine or heroin will never support a conviction for possession of the other").

*Woodard* at ¶ 34.

{¶ 56} I believe it is important to dissect this paragraph. In finding that Woodard's convictions for possession and aggravated possession were not allied offenses, the *Woodard* majority stated that it and "many others have held that the simultaneous possession of two types of drugs constitutes two separate offenses

that do not merge as allied offenses of similar import under R.C. 2925.11." *Id.* In supporting this proposition, the *Woodard* majority cited five cases with parentheticals that purportedly described *how* those cases supported its conclusion that Woodard's convictions were not allied offenses. I take issue with each case cited by the *Woodard* majority.

{¶ 57} First, the *Woodard* majority incorrectly relied — at least in part — on *Santiago* and *Heflin*. In the parenthetical following *Santiago*, the *Woodard* majority stated that the Eighth District found the "'simultaneous possession of heroin and cocaine, each recognized as a separate offense under R.C. 2925.11, does not constitute allied offenses of similar import for sentencing.'" *Id.* at ¶ 34. In the parenthetical following *Heflin*, the *Woodard* majority stated that the Sixth District found that the defendant's possession of cocaine and possession of heroin did not merge as allied offenses of similar import as "possession of either cocaine or heroin will never support a conviction for possession of the other." *Id.* But I have previously outlined the issues with *Santiago* and *Heflin* and explained why they are not applicable when the heroin and fentanyl are mixed together in the same bag and are indistinguishable from one another.

{¶ 58} Each of the other three cases cited by the *Woodard* majority for the proposition that two different drugs mixed together in the same bag constitutes separate offenses that do not merge are factually distinguishable. Not only are the cases distinguishable, they do not stand for what the *Woodard* majority stated they did.

{¶ 59} The *Woodard* majority explained in the parenthetical following *Graves,* 12th Dist. Clermont No. CA2015-03-022, 2015-Ohio-3936, that the Twelfth District held that "defendant's convictions for trafficking in heroin and aggravated trafficking in drugs did not merge." *Woodard* at ¶ 34. But in *Graves*, the heroin and fentanyl were in two separate bags. The *Woodard* majority stated in the parenthetical following *Daniels*, 12th Dist. Fayette No. CA2014-05-010, 2015-Ohio-1346, that the court found the defendant's convictions for trafficking heroin, trafficking cocaine, and trafficking methadone did not merge as "'[e]ach trafficking offense required proof specific to that drug and could not be supported by trafficking in a different controlled substance.'" *Id.* In *Daniels*, however, there is not one sentence in the entire opinion that indicates how the three drugs (heroin, cocaine, and methadone) were packaged. Finally, the *Woodard* majority stated in the parenthetical citing *Helmick*, 9th Dist. Summit No. 27179, 2014-Ohio-4187, that the Ninth District found "defendant's convictions for aggravated possession of drugs and possession of marijuana did not merge as allied offenses." *Id.* In *Helmick*, however, the two drugs, marijuana and methamphetamine, were not found packaged together; the defendant had the marijuana in his lap and the methamphetamine in his pocket.

{¶ 60} The *Woodard* court went on to conclude:

> Possession of heroin and aggravated possession of drugs are two separate offenses pursuant to R.C. 2925.11(C)(6) and (C)(1). Each possession offense required proof as to the specific drug involved and could not be supported by possession of a different controlled substance. *See Daniels* at ¶ 17; *State v. Delfino*, 22 Ohio St.3d 270, 22

Ohio B. 443, 490 N.E.2d 884 (1986), syllabus. The possession of heroin or fentanyl will never support a conviction for possession of the other. The fact that the two controlled substances were found in the same baggie is of no consequence. *See Heflin* at ¶ 9-14. Therefore, appellant's possession offenses are not allied offenses of similar import. Appellant's first assignment of error is overruled.

*Id.* at ¶ 35.

{¶ 61} This reasoning, albeit not explicitly, harkens back to the days of *State v. Rance*, 85 Ohio St.3d 632, 710 N.E.2d 699 (1999), where courts did not often find that two offenses were allied offenses of similar import because they focused on the elements of the offenses rather than the defendant's conduct. *See id.* at paragraph one of the syllabus ("Under an R.C. 2941.25(A) analysis, the statutorily defined elements of offenses that are claimed to be of similar import are compared in the abstract."). Under the "comparison-of-the-elements test," merger occurred "very rarely." *See In re A.G.*, 148 Ohio St.3d 118, 2016-Ohio-3306, 69 N.E.3d 646, ¶ 13. But the Ohio Supreme Court overruled *Rance* in 2010. *See Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, at the syllabus.

{¶ 62} Having found that the legal reasoning set forth by the *Woodard* majority is flawed on several fronts, this court should not have relied on it in *Perry*, 8th Dist. Cuyahoga No. 105501, 2018-Ohio-487 (the third case cited by the majority in the present case to support its proposition that the "simultaneous possession of heroin and fentanyl do not merge as allied offenses.").

{¶ 63} The majority claims that the doctrine of stare decisis "requires this court to adhere to *Perry* as the law of this district." I disagree. As I have

explained, *Perry* relied on cases that were decided before *Ruff*. And the one case that *Perry* cited to that was released after *Ruff* (*Woodard*), also followed several cases that were decided under old allied-offenses law. It is therefore my view that *Perry* was wrongly decided and must be overruled. No reviewing court should blindly follow the law set forth in a previous case when the previous case relied on law that is no longer valid.

{¶ 64} It is worth noting that one judge in *Woodard* dissented. He actually concurred in part and dissented in part but it is his dissent that is relevant. I agree with his well-reasoned dissenting opinion. The dissenting judge explained:

> In the present case, appellant handed over a single bag of drugs to Deron Partee. The bag contained a mixture of heroin, a schedule I drug, and fentanyl, a schedule II drug. The possession of either drug may constitute a criminal offense. Appellant was tried and convicted on one count of possession of heroin and one count of aggravated possession of drugs related to the fentanyl. The trial court found that the convictions did not merge and the majority opinion affirms that decision. The only evidence that the majority relies on is the crime lab evidence that the .106 grams of powder contained "+/- 0.0123" grams of heroin and the notation "[s]ample also found to contain [f]entanyl." Though it is true that "possession of heroin or fentanyl will never support a conviction of possession of the other," that conclusion ignores the reality of what occurred in this case [i.e., the defendant's conduct]. Appellant possessed a single bag of drugs. There is no evidence that appellant knew the bag of drugs contained both heroin and fentanyl. Without the help of science and technology, it is not clear if a person could distinguish that the bag contained both heroin and fentanyl. The bag was merely categorized by a corrections officer as an "off-white, talcum powder type material."

*Id.* at ¶ 43-44 (Ringland, J., concurring in part and dissenting in part).

{¶ 65} The dissenting judge in *Woodard* further explained:

This issue is intertwined with the very serious problems associated with the opioid epidemic. Rising mortality rates due to accidental overdose are due in part to the fact that drug dealers are spiking heroin with much more potent synthetic opioids, such as fentanyl and carfentanil. Synthetic opioids are usually in the form of a white powder and may be indistinguishable from other street drugs. Fentanyl and carfentanil are multiple times more powerful than heroin and can be purchased at a lower cost. The incentive for the dealer is simple. Adding a small amount of fentanyl or carfentanil to heroin is a low-cost way to increase its value. The dealer may take heroin, cut it with a common filler to increase the volume and then add a more powerful synthetic opioid to maintain high potency. The dealer would then sell the drug to the user who may be completely unaware of the contents.

That is the situation that occurred here. The evidence supports appellant's guilt on a possession charge, but the charges should have been merged. Appellant possessed a single bag containing an opioid, off-white powder. The merger doctrine is designed to prevent punishment for the same offense under two different statutes. I have reservations about allowing two convictions under these circumstances where there is absolutely no evidence, either directly or circumstantially, that appellant knew the bag contained two separate opioid drugs. Simply, the record reflects that the particular heroin that appellant possessed was laced with fentanyl. In this case, there was a single course of conduct. There is no evidence that the offenses were committed with separate animus or motivation. Though heroin (an opioid) and fentanyl (a synthetic opioid) are scheduled differently, there was no separate or identifiable harm based on these facts. Under these circumstances, I do not see the societal benefit to convicting a drug user on two charges from what is generally one criminal act. Moreover, I do not believe the majority decision comports with the rationale behind the merger analysis and double jeopardy protections.

* * *

A bulk weight finding was not made in this case, but it is worth considering the effect of the majority's decision as applied to the statutory scheme. As noted above, fentanyl is an increasingly common adulterant in heroin. The crime lab evidence showed that appellant possessed .106 grams of powder. The powder contained "+/- 0.0123" grams of heroin and an unspecified amount of fentanyl. Based on the

Ohio Supreme Court's decision in [*State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419], the filler and adulterants are part of the usable drug. Therefore, appellant possessed both .106 grams of heroin and .106 grams of fentanyl, even though appellant only possessed .106 grams of powder. If appellant had possessed the necessary bulk weights he would have been sentenced in accordance with those provisions. In other words, the majority decision permits: (1) a conviction for the possession of heroin with fentanyl considered as adulterant material, and (2) a separate conviction for the possession of fentanyl with heroin considered as adulterant material. Such a result does not comport with the Double Jeopardy Clause, as it would allow two punishments for the same offense.

*Id.* at ¶ 45-46, 49.

{¶ 66} Although the defendant in *Woodard* was convicted and sentenced on separate possession offenses instead of trafficking offenses, it is my view that the same reasoning applies to both types of offenses. The *Woodard* dissent, however, did not believe so. He distinguished traffickers from those who are convicted of possession, stating "This analysis, of course, is limited to possession [because] [d]rug traffickers, the individuals adding these highly dangerous compounds and fueling the opioid epidemic, would not be covered under such a merger analysis." *Id.* at ¶ 46, fn.5. But when dealers sell drugs, there is often a chain of many dealers. It is not often known where along the way the drug was laced with, or cut with, another drug or filler. Thus, without proof that a defendant who was convicted of trafficking heroin and trafficking fentanyl, where the drugs are comingled in one package and indistinguishable from one another, was actually the dealer who comingled and/or cut the drugs, the defendant cannot be convicted and sentenced for trafficking both drugs.

{¶ 67} The majority cites to seven other cases that it claims held "post-*Ruff*" that "possession or trafficking of different drug groups constitutes different offenses." Five of these cases, however, discuss simultaneous possession, but again, nowhere in the opinions do the courts address whether the drugs were comingled in one bag and indistinguishable from one another. *See State v. Stuckey*, 1st Dist. Hamilton No. C-170285, 2018-Ohio-4435, ¶ 10 ("The record does not indicate that the cocaine and fentanyl were mixed. If anything, the fact that the two drugs were listed as having been weighed separately, and that only the cocaine was described as having been prepared for distribution, indicates that the two drugs were not combined."); *State v. Howard*, 4th Dist. Scioto No. 16CA3762, 2017-Ohio-9392 (defendant convicted of and sentenced on possession of heroin and possession of cocaine, but nowhere in the opinion does it discuss if the drugs were comingled and indistinguishable from one another); *State v. Hunt*, 7th Dist. Jefferson No. 17JE0012, 2018-Ohio-815 (defendant convicted of and sentenced on possession of heroin and possession of cocaine, but nowhere in the opinion does the court discuss if the drugs were comingled and indistinguishable from one another); *State v. Ratliff*, 6th Dist. Lucas No. L-16-1187, 2017-Ohio-2816 (defendant convicted of and sentenced on possessing over five grams of cocaine and 0.07 grams of heroin, and thus, the drugs were separate and distinguishable from one another); and *State v. Dodson*, 9th Dist. Medina No. 16CA0020-M, 2017-Ohio-350 (defendant convicted of and sentenced on possession of heroin, cocaine, and methadone, but nowhere in the opinion does the court address whether the

drugs were comingled and indistinguishable from one another). As I explained earlier, "simultaneous possession" can entail having a bag of fentanyl in one pocket and a bag of heroin in another pocket. Therefore, five of the majority's post-*Ruff* cases, *Stuckey*, *Howard*, *Hunt*, *Ratliff*, and *Dodson* have no application to the facts in the present case.

{¶ 68} The majority does cite to two post-*Ruff* cases, *State v. Pendleton*, 2d Dist. Clark Nos. 2017-CA-9 and 2017-CA-17, 2018-Ohio-3199, and *State v. Morgan*, 5th Dist. Richland No. 18CA121, 2019-Ohio-2816, that support its position in this case. *Pendelton*, however, is currently pending in the Ohio Supreme Court on this exact issue on a certified conflict with *State v. Lee*, 11th Dist. Ashtabula No. 2018-A-0009, 2018-Ohio-4376. *See State v. Pendelton*, 154 Ohio St.3d 1443, 2018-Ohio-4962, 113 N.E.3d 551, and *State v. Lee,* 154 Ohio St.3d 1476, 2019-Ohio-169, 114 N.E.3d 1205. In these cases, the Ohio Supreme Court accepted review of the following proposition of law: "A criminal defendant's right against double jeopardy as guaranteed by the United States and Ohio Constitutions is violated when he is convicted for two drug trafficking offenses where the drugs in each offense are calculated as filler for the other offense." The Supreme Court heard oral arguments in these cases on January 8, 2020.

{¶ 69} The defendant in *Pendelton* was convicted in relevant part of trafficking heroin and trafficking fentanyl when all police found (related to these charges) was one bag of comingled heroin and fentanyl weighing 0.78 grams. The

Second District determined in *Pendelton* that the offenses do not merge, reasoning:

> In this case, Pendleton's conviction for trafficking in heroin required proof that the "drug involved in the violation [was] heroin or a compound, mixture, preparation, or substance containing heroin," pursuant to R.C. 2925.03(C)(6), and his conviction for trafficking in fentanyl required proof that the "drug involved in the violation [was] any compound, mixture, preparation, or substance included in [S]chedule I or [S]chedule II, with the exception of * * * heroin," pursuant to R.C. 2925.03(C)(1). His conviction for possession under R.C. 2925.11(C)(6) required proof that the "drug involved in the violation [was] heroin or a compound, mixture, preparation, or substance containing heroin," and his conviction for possession under R.C. 2925.11(C)(1) required proof that the "drug involved in the violation [was] any compound, mixture, preparation, or substance included in [S]chedule I or II, with the exception of * * * heroin." Accordingly, Pendleton's conviction for trafficking in heroin required proof of different facts under a different subsection vis-à-vis his conviction for trafficking in fentanyl, and his conviction for possession of heroin required proof of different facts under a different subsection vis-à-vis his conviction for possession of fentanyl.

*Pendleton*, 2d Dist. Clark Nos. 2017-CA-9 and 2017-CA-17, 2018-Ohio-3199, ¶ 30.

**{¶ 70}** It is my view that the Second District's reasoning in *Pendelton* is flawed because the court continually discussed the elements of the offenses rather than the defendant's conduct.

**{¶ 71}** Rather, I agree with the Eleventh District's decision in *Lee,* 11th Dist. Ashtabula No. 2018-A-0009, 2018-Ohio-4376. In *Lee*, the Eleventh District followed the reasoning set forth by the dissenting judge in *Woodard*, 12th Dist. Warren No. CA2016-09-084, 2017-Ohio-6941. The Eleventh District explained:

> The dissent in *Woodard* relied on *State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, in which the Ohio Supreme Court held: "R.C. 2925.11(C)(4)(b) through (f) penalizes an offender for the

amount of cocaine possessed, and the amount of 'cocaine' clearly encompasses the whole compound * * * of cocaine, including fillers that are part of the usable drug." *Gonzales* at ¶ 9.

In arriving at its decision in *Gonzales*, the Court relied on R.C. 2925.11(C)(4), the statute describing the cocaine-possession offense, which provides: "If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine." The penalty sections of the statute then set forth increasing degrees of punishment depending on the weight of the cocaine in the offender's possession.

* * *

Appellant possessed one bag containing a powdery-solid substance comprised of heroin and fentanyl, but the state did not quantify the amount of each drug contained therein. Applying the rule in *Gonzales*, the filler and adulterants are part of the usable drug. Since the heroin involved here was adulterated with fentanyl or the fentanyl was adulterated with heroin, depending on the state's theory of the case, the weights of both should have been combined in arriving at the weight of the primary drug. The lab evidence showed that appellant possessed .566 gram of a powdery-solid material. According to the indictment, appellant possessed .566 gram of heroin and .566 gram of fentanyl, even though appellant only possessed .566 gram of a powdery-substance. In other words, the trial court's decision allowed for a conviction of possession of heroin with fentanyl considered as an adulterant and a separate conviction for the possession of fentanyl with heroin considered as an adulterant. Such a result violates the Double Jeopardy Clause as it would allow two punishments for the same offense.

*Lee* at ¶ 22 – 23, 27, citing *Woodard*.

{¶ 72} Similarly, in this case, police found one bag of drugs that contained 27 grams of heroin and fentanyl that were comingled and indistinguishable from one another. Just as the Supreme Court explained in *State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, about possession, the penalties for

trafficking drugs under R.C. 2925.03 also depend on the amount of drug found in the defendant's possession; i.e., the weight of the drug. Under *Gonzales*, the weight of the drug includes all fillers (explaining that "[p]rior to distribution, powder cocaine typically is 'cut,' or diluted, by adding * * * one or more adulterants: sugars, local anesthetics (e.g., benzocaine), other drugs, or other inert substances. Consequently, the purity level of powder cocaine may vary considerably."). The majority states that police found "well over 100 doses of fentanyl and heroin" in Daniels's home. But police did not find 100 doses of heroin *and* 100 doses of fentanyl in Daniels's home. Nonetheless, Daniels was convicted of trafficking both drugs despite the fact that the heroin and fentanyl could not be distinguished from one another and separately weighed. This violated Daniels's double jeopardy rights under the U.S. and Ohio Constitutions.

{¶ 73} The majority in this case states that it "declines to find that the legislature intended that drug users who simultaneously possess two drugs can be convicted of two offenses while drug dealers, who are lacing the drugs and putting the deadly combination of drugs out on the streets, can only be convicted of one offense." The majority implies that this writer would allow drug possessors to be convicted of two offenses but traffickers of only one. This writer, however, would find that under both convictions, possession and trafficking, that unless the state can separate and distinguish the two drugs, then the convictions must merge.

{¶ 74} While I understand the serious harm that has been done to thousands of Ohioans by the deadly opioid epidemic, we must not lose sight of a

defendant's constitutional right to be free from multiple punishments under the Double Jeopardy Clause. Accordingly, I respectfully concur in part and dissent in part.