[Cite as *State v. Wright*, 2021-Ohio-3818.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                        :

    Plaintiff-Appellee,        :

                                No. 110307

    v.                                        :

RALPHIA WRIGHT,                       :

    Defendant-Appellant.       :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, VACATED IN PART,
                  AND REMANDED
**RELEASED AND JOURNALIZED:** October 28, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-648518-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Ronnie Ducoff, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Noelle A. Powell, Assistant Public Defender, *for appellant.*

SEAN C. GALLAGHER, P.J.:

{¶ 1} Ralphia Wright ("Wright") appeals her conviction for attempted endangering children in violation of R.C. 2923.02 and 2919.22(A), a felony of the fourth degree, and the sentence imposed by the trial court. Upon review, we vacate

the postrelease control portion of the sentence and remand for a resentencing hearing limited to the proper imposition of discretionary postrelease pursuant to R.C. 2967.28(C). The judgment of the trial court is affirmed in all other respects.

{¶ 2} On August 13, 2020, Wright was indicted on one count of endangering children in violation of R.C. 2919.22(A), a felony of the third degree. The indictment alleges that on or about November 29, 2019, to December 1, 2019, Wright "being a parent * * * of a child under eighteen years of age, did recklessly create a substantial risk to the health or safety of Jane Doe, DOB 9/8/2019, by violating a duty of care, protection, or support." The indictment includes a furthermore clause that states "the violation resulted in serious physical harm to Jane Doe, DOB 9/8/2019." The victim in the case was Wright's infant child, who was two and a half months old at the time of the incident.

{¶ 3} Wright initially entered a plea of not guilty. Following discovery, she reached a plea agreement with the state. At the plea hearing held on January 4, 2021, the parties acknowledged that pursuant to the plea agreement "the State of Ohio has amended [Count 1 to] attempted endangering children, a felony of the fourth degree." Before accepting a plea, the trial court informed Wright of the constitutional rights she was waiving and determined that she understood the nature of the charge, the maximum penalty involved, and the effect of the guilty plea. The trial court determined that the plea was being made by Wright knowingly, intelligently, and voluntarily. Defense counsel and the assistant prosecutor agreed that the trial court complied with Crim.R. 11. Wright retracted her former plea and

entered a plea of guilty to an amended charge of attempted endangering children in violation of R.C. 2923.02 and 2919.22(A), a felony of the fourth degree.

{¶ 4} A sentencing hearing was held on January 25, 2021. The facts set forth on the record reflect that Wright and the infant child's father had a shared custody arrangement, and the child spent time with each of them in separate households. When the child was two and a half months old, Wright picked her up on a Friday night after the child had been with her father since the previous Monday. Wright began noticing symptoms over the course of the weekend. The child slept through Friday night and did not wake in the middle of the night, which was unusual. On Saturday, the child began to shake, did not make eye contact, and refused to eat the entire day. Wright stated the child was "acting crazy." On Sunday, the child was "looking different," was still refusing to eat, and was losing weight to the point that her diaper was falling off. It was not until around 2:00 p.m. on Sunday that Wright called EMS. When EMS arrived, the child was observably shaking. The child was taken to the hospital, where it was determined that the infant had brain injuries and multiple fractures in various stages of healing. The injuries were significant, including multiple rib and skull fractures, a clavicle fracture, and retinal hemorrhages. It was not disputed that the cause of these physical injuries to the infant child was unknown.

{¶ 5} The state discussed the symptoms the child displayed over the course of the weekend and maintained that "with all those symptoms, medical attention should have been sought way before Sunday afternoon * * *." Defense counsel

discussed mitigating factors and argued that there was no indication Wright had caused the physical injuries over the two-and-a-half-month time span and that she should not be punished for causing those injuries.

{¶ 6} The trial court expressed its concern with the fact that the injuries had occurred "over the entirety of this very, very short time span in this baby's life she suffered multiple, serious injuries that to any baby would require and you would seek treatment." The court clarified that neither the state nor the court was suggesting that Wright caused the injuries over the time span, but rather, given the fact that multiple serious injuries occurred over a two-and-a-half-month period of time, "the only time that somebody finally called for EMS was at this point in the weekend when she's exhibiting seizures" that medical treatment was sought. The court also stated it did not appear "that it was just a weekend in which this child was denied care."

{¶ 7} Defense counsel responded that there was nothing to show the injuries were displayed in a significant way before Wright sought medical treatment for the child. Wright expressed to the court that "once I noticed those signs, I took her [to the hospital]" and that she believed she "was doing a good thing by taking her [child] to the hospital." Wright expressed that she loved all her children. She had no prior record of abusing her children and had only a minor misdemeanor in her criminal history.

{¶ 8} The trial court heard from the parties and indicated it had reviewed the presentence investigation report and sentencing memorandum filed by the state.

It also considered the purposes and principles of sentencing and the sentencing factors under R.C. 2929.11 and 2929.12. The court determined that "a prison term is consistent with the purposes and principles of sentencing and that the defendant is not amenable to the community-controlled sanctions in this case." The trial court reiterated that "she's being punished for endangering children" and reflected upon the facts of the case. The trial court sentenced Wright to a prison term of ten months and imposed three years of mandatory postrelease control.

{¶ 9} Wright timely filed this appeal. She raises five assignments of error for our review.

{¶ 10} Under her first assignment of error, Wright claims the plea taken by the trial court constituted a misdemeanor of the first degree.

{¶ 11} Wright was indicted on one count of endangering children in violation of R.C. 2919.22(A), a felony of the third degree, with a furthermore clause that states "the violation resulted in serious physical harm" to the child involved. Pursuant to a plea agreement, the state amended the indicted charge to attempted endangering children, a felony of the fourth degree. Wright understood that "by entering a plea of guilt you admit to the truth of the facts and your full guilt to the amended indictment." She also agreed she was pleading guilty to "attempted endangering children, a felony of the fourth degree" and the offense "is punishable from six to 18 months incarceration and up to a $5,000 fine." The court stated that

the sentence would include "mandatory post-release control for three years" because the offense qualified as a crime of violence. The guilty plea was entered as follows:

> THE COURT: Ms. Wright, then how do you plead to amended Count 1, endangering children -- attempted endangering children, a felony of the fourth degree?
>
> THE DEFENDANT: Guilty.

{¶ 12} Wright argues that she did not plead to an offense of violence because there was no mention on the record of the furthermore clause that appeared in the indictment and she was never asked to enter a plea to the furthermore clause. As a result, she claims that the crime to which she entered a guilty plea can only constitute a misdemeanor of the first degree under R.C. 2919.22(E)(2)(a).

{¶ 13} In support of her argument, Wright cites this court's decisions in *State v. Cargill*, 2013-Ohio-2689, 991 N.E.2d 1217 (8th Dist.), and *State v. Freeman*, 8th Dist. Cuyahoga No. 103677, 2016-Ohio-3178. In *Cargill*, the defendant pled guilty to a charge of failure to comply in violation of R.C. 2929.331(B) and the furthermore clause stating the appellant caused a substantial risk of serious physical harm to persons or property was deleted pursuant to the plea agreement. *Id.* at ¶ 2-3. The court then erroneously relied upon information in a presentence investigation report, as opposed to the admitted facts of the plea, to find the offense constituted an offense of violence. *Id.* at ¶ 4, 21-25. As recognized in *Cargill*, the initial indictment included a furthermore clause and "[h]ad appellant pled guilty to the offense as indicted, it would have qualified as an offense of violence. However, pursuant to the plea agreement, the furthermore clause was deleted * * *." *Id.* at

¶ 22. Likewise, in *Freeman*, the defendant entered a guilty plea to an amended burglary/trespass in habitation charge without a furthermore clause. *Id.* at ¶ 4, 15. Those cases are easily distinguished.

{¶ 14} Here, the indicted charge included a furthermore clause and the only amendment to the indictment was to add the attempt to the indicted charge, making it a violation of R.C. 2923.02 and 2919.22(A), a felony of the fourth degree. No other change to the indictment was made, and the furthermore clause was not deleted. At the plea hearing, the court confirmed with the assistant prosecutor and defense counsel that the indicted charge was amended from a felony of the third degree to attempted endangering children, a felony of the fourth degree. As acknowledged by defense counsel, the count was amended to add the attempt, making it a felony of the fourth degree. Wright confirmed that she had time to go over the plea agreement with her attorney, and she expressed her satisfaction with the representation provided. The trial court informed Wright that the amended charge of attempted endangering children is a felony of the fourth degree and informed her of the maximum prison term that could be imposed. Nothing in the record suggests that Wright did not understand the nature of the charge.

{¶ 15} Pursuant to Crim.R. 11(C)(2)(a), before accepting a plea of guilty in a felony case, the trial court must address the defendant personally and determine "that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved * * *." The trial court is not required to inform the accused of the actual elements of the charged offense. *State*

*v. Daniels*, 8th Dist. Cuyahoga No. 108299, 2020-Ohio-1496, ¶ 17, citing *State v. Carpenter*, 8th Dist. Cuyahoga No. 81571, 2003-Ohio-3019, ¶ 2.

{¶ 16} Wright entered a guilty plea, thereby admitting to the indicted charge as amended to attempted endangering children in violation of R.C. 2923.02 and 2919.22(A) with the attendant furthermore clause, a felony of the fourth degree. A plea of guilty is "a complete admission of the defendant's guilt." Crim.R. 11(B)(1). Moreover, "[a] guilty plea is a complete admission of the facts set forth in the indictment, including all specifications contained therein." *State v. Fry*, 8th Dist. Cuyahoga No. 109593, 2021-Ohio-2838, ¶ 26, citing *State v. Sims*, 2019-Ohio-4975, 149 N.E.3d 1143, ¶ 18 (8th Dist.). Accordingly, by entering a plea of guilty to the amended charge, Wright admitted the violation resulted in serious physical harm to the child.

{¶ 17} Pursuant to R.C. 2919.22(E)(2)(c), "[i]f the violation is a violation of division (A) of this section and results in serious physical harm to the child involved," the offense is "a felony of the third degree." An attempt to commit an offense "is an offense of the next lesser degree than the offense attempted." R.C. 2923.02(E). Upon our review, we find the trial court did not err in convicting Wright of the amended charge, which is a felony of the fourth degree. Wright's first assignment of error is overruled.

{¶ 18} Under her second assignment of error, Wright claims the trial court erred by imposing a prison sentence rather than a community control sanction under R.C. 2929.13(B)(1)(a). Wright contends that she was not charged with an

"offense of violence" as that term is defined under R.C. 2901.01(A)(9) and that the trial court was required to impose community control sanctions because the conditions under R.C. 2919.13(B)(1)(a) apply. However, she ignores the implication of R.C. 2919.13(B)(1)(b).

{¶ 19} Wright entered a plea of guilty to an amended charge of attempted endangering children for having attempted to "recklessly [create] a substantial risk to the health or safety of" the child "by violating a duty of care, protection, or support" and furthermore "the violation resulted in serious physical harm" to the child. The trial court sentenced Wright to a ten-month prison term. Even if we assume for purposes of our analysis that the offense is not "an offense of violence" as defined under R.C. 2901.01(A)(9)(c), the trial court was authorized to impose a prison term pursuant to R.C. 2929.13(B)(1)(b)(ii).[1]

{¶ 20} R.C. 2929.13(B)(1)(a) instructs that "[e]*xcept as provided in division (B)(1)(b) of this section*," a community control sanction is required to be imposed when the conditions thereunder apply and "an offender is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense * * *." (Emphasis added.) R.C. 2929.13(B)(1)(b) states in pertinent part:

> (b) The court has discretion to impose a prison term upon an offender who is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense if any of the following apply:

---

[1] We need not determine whether the offense constitutes an offense of violence.

\* \* \*

(ii) If the offense is a qualifying assault offense, the offender caused serious physical harm to another person while committing the offense, and, if the offense is not a qualifying assault offense, the offender caused physical harm to another person while committing the offense.

{¶ 21} By pleading guilty in this case, Wright admitted she violated a duty of care, protection, or support and the violation resulted in serious physical harm to the child. The trial court had the discretion to impose a prison term pursuant to R.C. 2929.13(B)(1)(b)(ii). *See State v. Smith*, 5th Dist. Delaware No. 14CAA100066, 2015-Ohio-1531, ¶ 16-19. The second assignment of error is overruled.

{¶ 22} Under her third assignment of error, Wright claims the trial court erred by imposing mandatory postrelease control. The record reflects that the trial court imposed a ten-month prison term and three years of mandatory postrelease control under former R.C. 2967.28. Wright argues that for her fourth-degree felony offense, postrelease control should be at the discretion of the Ohio Department of Rehabilitation and Correction ("ODRC") pursuant to R.C. 2967.28.

{¶ 23} The version of R.C. 2967.28(C) effective until September 30, 2021, which would have applied to Wright's original sentence, provides in pertinent part:

> *Any sentence* to a prison term for a felony of the third, fourth, or fifth degree that is not subject to division (B)(1) or (3) of this section *shall include a requirement that the offender be subject to a period of post-release control* of up to three years after the offender's release from imprisonment, if the parole board, in accordance with division (D) of this section, determines that a period of post-release control is necessary for that offender.

(Emphasis added.) [2]

{¶ 24} Because R.C. 2967.28(B)(1) and (3) are not applicable in this case, pursuant to R.C. 2967.28(C), Wright's sentence should have included a discretionary period of postrelease control after her release from imprisonment. The state concedes the error. However, because we must remand for the proper imposition of postrelease control, we find it necessary to address the recent amendment to R.C. 2967.28, effective September 30,2021, and the trial court's statutory responsibility for imposing postrelease control as part of a felony sentence.

{¶ 25} R.C. 2967.28(B) and (C), as amended by 2021 Ohio H.B. 110, Section 101.01, now provide as follows:

> (B) Each sentence to a prison term, other than a term of life imprisonment, for a felony of the first degree, for a felony of the second degree, for a felony sex offense, or for a felony of the third degree that is an offense of violence and is not a felony sex offense *shall include a requirement that the offender be subject to a period of post-release control imposed by the parole board after the offender's release from imprisonment.* This division applies with respect to all prison terms of a type described in this division, including a term of any such type that is a risk reduction sentence. If a court imposes a sentence including a prison term of a type described in this division on or after July 11, 2006, the failure of a sentencing court to notify the offender pursuant to division (B)(2)(d) of section 2929.19 of the Revised Code of this requirement or to include in the judgment of conviction entered on the journal a statement that the offender's sentence includes this requirement does not negate, limit, or otherwise affect the mandatory period of supervision that is required for the offender under this division. This division applies with respect to all prison terms of a type

---

[2] Similarly, R.C. 2929.14(D)(2) provides: "If a court imposes a prison term for a felony of the third, fourth, or fifth degree that is not subject to division (D)(1) of this section, *it shall include in the sentence a requirement that the offender be subject to a period of post-release control* after the offender's release from imprisonment, in accordance with that division, if the parole board determines that a period of post-release control is necessary." (Emphasis added.)

described in this division, including a non-life felony indefinite prison term. Section 2929.191 of the Revised Code applies if, prior to July 11, 2006, a court imposed a sentence including a prison term of a type described in this division and failed to notify the offender pursuant to division (B)(2)(d) of section 2929.19 of the Revised Code regarding post-release control or to include in the judgment of conviction entered on the journal or in the sentence pursuant to division (D)(1) of section 2929.14 of the Revised Code a statement regarding post-release control. Unless reduced by the parole board pursuant to division (D) of this section when authorized under that division, a period of post-release control required by this division for an offender shall be of one of the following periods:

(1) For a felony sex offense, five years;

(2) For a felony of the first degree that is not a felony sex offense, up to five years, but not less than two years;

(3) For a felony of the second degree that is not a felony sex offense, up to three years, but not less than eighteen months;

(4) For a felony of the third degree that is an offense of violence and is not a felony sex offense, up to three years, but not less than one year.

(C) Any sentence to a prison term for a felony of the third, fourth, or fifth degree that is not subject to division (B)(1) or (4) of this section *shall include a requirement that the offender be subject to a period of post-release control of up to two years after the offender's release from imprisonment, if the parole board, in accordance with division (D) of this section, determines that a period of post-release control is necessary for that offender.* This division applies with respect to all prison terms of a type described in this division, including a term of any such type that is a risk reduction sentence. Section 2929.191 of the Revised Code applies if, prior to July 11, 2006, a court imposed a sentence including a prison term of a type described in this division and failed to notify the offender pursuant to division (B)(2)(e) of section 2929.19 of the Revised Code regarding post-release control or to include in the judgment of conviction entered on the journal or in the sentence pursuant to division (D)(2) of section 2929.14 of the Revised Code a statement regarding post-release control. Pursuant to an agreement entered into under section 2967.29 of the Revised Code, a court of common pleas or parole board may impose sanctions or conditions on an offender who is placed on post-release control under this division.

(Emphasis added.)

{¶ 26} R.C. 2967.28(C) now requires the sentence "*shall include a requirement that the offender be subject to a period of post-release control of up to two years* after the offender's release from imprisonment * * *." (Emphasis added.) The trial court, not ODRC, is required to impose postrelease control as part of the offender's sentence; and the trial court must notify the offender that postrelease control is included in the offender's sentence.[3] The trial court must impose postrelease control for the statutorily required "period" of "up to two years" under R.C. 2967.28(C); no other length of time is authorized. After the trial court imposes this period of postrelease control as part of the offender's sentence, ODRC becomes responsible for implementing the postrelease-control portion of the sentence in accordance with R.C. 2967.28(D) if it "determines that a period of post-release control is necessary for that offender."

{¶ 27} As the Supreme Court of Ohio has explained, regardless of the mandatory or discretionary nature of postrelease control, "pursuant to R.C. 2967.28(B) and (C), a trial court must inform the offender at sentencing or at the time of a plea hearing that post-release control is part of the offender's sentence." *Woods v. Telb*, 89 Ohio St.3d 504, 513, 2000-Ohio-171, 733 N.E.2d 1103. "Post-release control is a 'period of supervision by the adult parole authority after a

---

[3] R.C. 2929.19(B)(2)(e) instructs that the trial court notify a felony offender "that the offender may be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced for a felony of the third, fourth, or fifth degree that is not subject to division (B)(2)(d) of this section."

prisoner's release from imprisonment that includes one or more post-release control sanctions imposed under section 2967.28 of the Revised Code.'" *Id.* at 508, quoting R.C. 2967.01(N). "An offender who is released on postrelease control is under the general jurisdiction of the Adult Parole Authority and supervised by parole officers as if the offender had been placed on parole. R.C. 2967.28(F)(1)." *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 51 (Kennedy, J., dissenting). "The parole board has authority to impose 'conditions of release under a post-release control sanction that the board or court considers appropriate * * *.'" *Id.* at ¶ 50, quoting R.C. 2967.28(D)(1). "If the Adult Parole Authority determines that an offender has violated a condition of postrelease control, it may impose a more restrictive condition * * * or it may refer the matter for a hearing before the parole board, which has the authority to impose a prison term for a postrelease-control violation." *Id.* at ¶ 51, citing R.C. 2967.28(F)(2) and (3). "The sanction, even if a prison term, is administratively imposed." *Id.*

{¶ 28} We recognize that the trial court did impose postrelease control as part of Wright's sentence in this case. However, the trial court erred by imposing mandatory rather than discretionary postrelease control. Accordingly, we vacate the postrelease control portion of the sentence and remand for a resentencing hearing limited to the proper imposition of discretionary postrelease control pursuant to R.C. 2967.28(C) as the law exists under the statute, as amended by 2021 Ohio H.B. 110, Section 101.01, effective September 30, 2021. The third assignment of error is sustained.

{¶ 29} Under her fourth assignment of error, Wright claims she received ineffective assistance of counsel because her trial counsel failed to object to the imposition of a prison term on the statutory grounds and to the trial court's imposition of mandatory postrelease control. In order to prevail on a claim of ineffective assistance of counsel, Wright must show that her trial counsel's performance was deficient and that the deficient performance prejudiced her defense so as to deprive her of a fair trial. *State v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, 172 N.E.3d 8, ¶ 49, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 30} Wright concedes that her trial attorney strenuously argued against a prison sentence and repeatedly reminded the court that she was not accused of causing the injuries to the child over the course of the two-and-a-half-month time span. Her argument is that her trial attorney should have raised the statutory challenges she has raised on appeal. Having determined that Wright was properly convicted of a felony of the fourth degree and that a prison sentence could be imposed, we are unable to find defense counsel's performance was deficient in this regard. Further, because the trial court's error in imposing mandatory postrelease control can be corrected on remand, we are unable to find any prejudice to Wright. The fourth assignment of error is overruled.

**{¶ 31}** Under her fifth assignment of error, Wright claims that her sentence is contrary to law because it is based on unindicted conduct.

**{¶ 32}** By entering a guilty plea, Wright admitted to the charge of attempted endangering children, with a furthermore clause that the "violation resulted in serious physical harm" to her child. In sentencing Wright for the fourth-degree felony charge, the trial court found a prison term to be consistent with the purposes and principles of felony sentencing under R.C. 2929.11, and the court considered the seriousness and recidivism factors under R.C. 2929.12. Wright acknowledges that the Ohio Supreme Court has held that "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 42. Wright instead argues that her sentence is contrary to law because the trial court believed Wright was responsible for her infant child's injuries and sentenced her for that unindicted conduct. That is simply not the case.

**{¶ 33}** In considering the seriousness of the offense, the trial court commented upon the extent of the injuries the child had sustained over a relatively short time span and recognized some of those injuries were old. However, the trial court was not implying that Wright caused the injuries over that time span; rather, the court clarified that neither the state nor the court was suggesting that Wright caused the injuries. Ultimately, despite the extent of the child's injuries and the

symptoms the child displayed over the course of an entire weekend, Wright did not call EMS until that Sunday afternoon. As recognized by the trial court, given the fact that multiple serious injuries occurred over a two-month period of time, "the only time that somebody finally called for EMS was at this point in the weekend when she's exhibiting seizures * * *."

{¶ 34} Additionally, in considering the likelihood of recidivism and the need to protect the public, the trial court was free to consider Wright's criminal history. The trial court was made aware of a prior minor misdemeanor offense for disorderly conduct that involved another one of Wright's children, who was found by a bus driver wandering by the road near a bus stop. The record does not reflect any improper bolstering occurred, and we are not persuaded by any other argument presented by Wright.

{¶ 35} Upon our review of the record, we are unable to clearly and convincingly find that the sentence is contrary to law. The fifth assignment of error is overruled.

{¶ 36} In conclusion, we vacate the postrelease control portion of the sentence and remand for a resentencing hearing limited to the proper imposition of discretionary postrelease control pursuant to current R.C. 2967.28(C), effective September 30, 2021. The judgment of the trial court is affirmed in all other respects.

It is ordered that appellant and appellee share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, PRESIDING JUDGE

EMANUELLA D. GROVES, J., CONCURS;
FRANK D. CELEBREZZE, JR., J., CONCURS WITH SEPARATE OPINION

FRANK D. CELEBREZZE, JR., J., CONCURRING:

{¶ 1} While I respectfully concur with the majority, I write separately to express how troubled I am by this case, particularly the fact that no one has been held responsible for the abuse that was inflicted on the helpless infant victim in this matter. As noted by the majority, the infant was just over two months old at the time that she was finally brought to the hospital and her past injuries were discovered. At that point in her short life, she had suffered injuries that would incapacitate an adult.

{¶ 2} At the time of Wright's sentencing, the victim was approximately 16 months old. During this hearing, the state informed the court of the baby's current physical condition. She had only been able to eat through a feeding tube, which had recently been removed, and soft foods were being incorporated into her diet. At a time when she should have been an active toddler, the baby was not even crawling and was unable to sit unsupported.

**{¶ 3}** This baby suffered appalling abuse during the most vulnerable part of her life and now has delays in development and will deal with lifelong repercussions. While the state noted that the cause of her injuries was not able to be determined, it is heartbreaking that no one has been held responsible for the life-altering abuse endured by this baby.